

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| Merrilee Stewart<br>182 Corbins Mill Drive<br>Dublin, Ohio 43017 | :<br>:<br>: |
|       Plaintiff,<br>  vs. | :<br>: Case Number: |
| The Hartford Financial Services Group, Inc.<br>Sentinel Insurance Company, Limited<br>One Hartford Plaza, T-14-CO<br>Hartford, CT. 06155 | :<br>: 2:19 cv 3 0 4<br>:<br>: |
| and | : |
| Tyler G. Smith, Esq.<br>One Hartford Plaza<br>Hartford, Connecticut 06155 | : Judge: [Judge Smith<br>: MAGISTRATE JUDGE VASCURA |
| and | : |
| Anne E. Trevethick<br>One Hartford Plaza, T- 14-CO<br>Hartford, Connecticut  06155 | :<br>:<br>: |
| and | : |
| Julie Dengler<br>101 Yorkshire Blvd, Suite B<br>Lexington, Kentucky 40509 | :<br>:<br>: |
|     Defendants. | :     **DEMAND**<br>:   **FOR JURY TRIAL** |

## COMPLAINT

Now comes Merrilee Stewart, Pro Se Plaintiff on behalf of Merrilee Stewart ("Ms. Stewart") with her complaint against The Hartford Financial Services Group, Inc. and Sentinel Insurance Company, Limited ("Hartford"), and Tyler G. Smith, Esq., Anne E. Trevethick and Julie Dengler.

Notice of Lawsuit, request to waive service and the complaint have been distributed to counsel for the Defendants pursuant to S.D. Ohio Civ. R. 4.2 and Fed. R. Civ. P. 4(d).

This complaint is signed by Ms. Stewart pursuant Fed. R. Civ. P. 11.

Ms. Stewarts' complaint is followed by certificate of service to all parties in the matter.

Respectfully Submitted,

/s/ Merrilee Stewart

Merrilee Stewart, *Pro Se*
182 Corbins Mill Drive
Dublin, Ohio 43017
Phone: (614) 395-9071
Fax: (740) 965-4437
E-mail: merrilee@trgunited.com

*Pro Se on behalf of Plaintiff*

## COMPLAINT

### I. PARTIES

1.      This action brought by Plaintiff Merrilee Stewart is under federal and state law and includes but is not limited to the tort of: 1) Bad Faith; 2) Breach of Duty of Good Faith and Fair Dealing; 3) Tortious Interference with a contractual and a business relationship; 4) Intentional Infliction of Emotional Distress; 5) Conversion; 6) Fraud and Misrepresentation; 7) Civil Conspiracy; and 8) Misprision of an Anti-Trust Felony.

2.      Plaintiff Merrilee Stewart has a contractual relationship and business relationship with Defendant Hartford under appointed authority as supplier agent/agency of products and services in multiple states.

3.      Plaintiff Merrilee Stewart has a contractual relationship with Defendant Hartford under more than one insurance contract.

4.      Plaintiff Ms. Stewart is a resident of the State of Ohio.

5.      Defendant Hartford is a company headquartered in the State of Connecticut.

6.      Defendant Tyler G. Smith, Esq. is a Manager Western General Liability and Auto Litigation of Hartford in the State of Connecticut and upon belief is a resident of the State of Connecticut.

7.      Defendant Anne E. Trevethick is the Senior Home Office Consultant Major Case Unit - Liability of Hartford in the State of Connecticut and upon belief is a resident of the State of Connecticut.

8.      Defendant Julie Dengler, CPCU, SCLA is a Claim Consultant at the Western General Liability Service Center on behalf of Hartford in the State of Kentucky and upon belief is a resident of the State of Kentucky.

9.      Upon information and belief, Defendant Tyler G. Smith, Esq., individually and/or by and through Hartford, has participated in communications, discussions, decisions and/or recommendations involving the Plaintiff Merrilee Stewart, the Plaintiff's contractual relationships with the Hartford including the claim reports, the Plaintiff's contractual relationships with non-party(s) IHT Insurance Agency Group, LLC, Firefly Agency, LLC, RRL Holding Company of Ohio, LLC (hereinafter "IHT/Firefly/RRL") and/or the Plaintiff's business relationships with IHT/Firefly/RRL.

10. Upon information and belief, Defendant Anne E. Trevethick, individually and/or by and through Hartford, has participated in communications, discussions, decisions and/or recommendations involving the Plaintiff Merrilee Stewart, the Plaintiff's contractual relationships with the Hartford including the claim reports, the Plaintiff's contractual relationships with non-party(s) IHT/Firefly/RRL and/or the Plaintiff's business relationships with IHT/Firefly/RRL.

11. Upon information and belief, Defendant Julie Dengler, individually and/or by and through Hartford, has participated in communications, discussions, decisions and/or recommendations involving the Plaintiff Merrilee Stewart, the Plaintiff's contractual relationships with the Hartford including the claim reports, the Plaintiff's contractual relationships with non-party(s) IHT/Firefly/RRL and/or the Plaintiff's business relationships with IHT/Firefly/RRL.

## II. JURISDITION AND VENUE

12. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1), being that this action involves citizens of different states where the matter in controversy exceeds $75,000.

13. To the extent the Plaintiff asserts state law claims, this Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. §1367.

## III. PRELUDE

14. As a whistleblower and victim, Plaintiff Merrilee Stewart is also in the double-edged position of being a minority owner of unredeemed shares in a company that wholly owns Firefly Agency, f/k/a IHT Insurance Agency ("IHT/Firefly"), which is the subject matter of the insurance claims and the facilitator of Federal Crimes harming our citizens and the supplier agents.

15. Mr. Alan Berliner, Esq. stated it clearly: "I understand that you feel strongly about the need to bring this to the Department's attention even though doing so may not be in your financial best interest (emphasis)."

16. Plaintiff Merrilee Stewart, as a victim and a whistleblower with first-hand knowledge of reported crimes and illegal activities, reported the on-going redlining, mail fraud in the roll-on of premiums, boycotting of segments of our citizens from access to insurance, forcing the suppliers to discriminate, mail theft belonging to the consumers and suppliers, and the embezzlement of millions of dollars of commissions resulting in the falsification of financial records.

17. Non-Party RRL and IHT/Firefly attempted to hide the embezzlement of millions of dollars of agent commission, perpetrated the illegal adjustment of policy changes without policy holder knowledge or notice, then clearly creating associated "Mail Fraud" by using the US Postal System for communication of the "unauthorized charges and overbilling".

18. The ensuing activities of cover-up, concealment and disparagement, retaliation and scorching to silence the messenger Plaintiff Merrilee Stewart, have served to compound the federal crimes with additional felony counts on the perpetrators Non-Party IHT/Firefly, the controlling board: Fritz Griffioen, Bill Griffioen and Rodney Mayhill and aided and abetted by counsel (James R. Carnes, Esq.).

19. Non-Party RRL, IHT/Firefly, the board and James R. Carnes, Esq. in concert of effort, continue to apply tactics to scorch, silence, discredit and present in a false light the whistleblower, messenger and informant Plaintiff Merrilee Stewart. They initiated the civil complaint against Ms. Stewart, presented false information, subordinated perjury and formally abused the process of the tribunal.

20.     The evidence of past, and ongoing, criminal activities and felonies committed by IHT/Firefly, Fritz Griffioen, Bill Griffioen and Rodney Mayhill have been presented to the Federal Bureau of Investigation ("FBI") and the Department of Justice ("DOJ") in Washington D.C. At present, additional insider informants have joined and provided collaborating evidence to the F.B.I. and the D.O.J. These newly joined informants include the original Founder and past president of IHT/Firefly, Norman L. Fountain, many of the former and current suppliers/agencies and former employees of IHT/Firefly. They collaborate the facts of the ongoing felony activities of IHT/Firefly, Fritz Griffioen, Bill Griffion, Rodney Mayhill and the culpable attorney, James Carnes, Esq.

## IV. ALLEGATIONS AND STATEMENTS OF FACT

### A. Historical Information on relevant non-party connection

21.     Plaintiff Merrilee Stewart became a minority owner in Non-Party RRL in 2007.

22.     RRL wholly owns Non-Party IHT/Firefly Agency.

23.     RRL essentially conducts no business aside from electing a board of managers to manage IHT/Firefly.

24.     IHT/Firefly board is unpaid and the board then elects' unpaid positions of authority.

25.     Plaintiff Merrilee Stewart served on the unpaid board in the years 2007-2014.

26.     A Plaintiff Merrilee Stewart served in the unpaid elected position of President of IHT/Firefly for approximately one year in 2013-2014.

27.     All profits of IHT/Firefly are distributed to the RRL owners by way of RRL 1065 Partnership Return and K-1's.

28.     Plaintiff Merrilee Stewart is an unredeemed minority owner of shares in RRL.

29.     The other RRL unredeemed owners are: Fritz Griffioen, Bill Griffioen and Rodney Mayhill.

30.     Norman L Fountain is partially redeemed on an agreement that was effective September 23, 2013.

31.     All RRL owners also had and continue to have independent agencies that were openly allowed to compete with IHT/Firefly pursuant to the operating agreements of IHT/Firefly and RRL.

32.     All RRL owners were allowed access to any insurance carrier that IHT/Firefly maintained an appointment with for customers within their own independent agencies.

33.     IHT/Firefly is an aggregator which sells carrier access to supplier/agents currently in 24 states per their Facebook post.

**B. Plaintiff Merrilee Stewart's contractual relationship with Defendant Hartford as a supplier/agent**

34.     Plaintiff Merrilee Stewart is a contracted supplier with Defendant Hartford of products and services offered to the public in multiple states.

35.     This contracted relationship began on or about 2007 through the appointed authority with Non-party IHT/Firefly under Defendant Hartford producer code 33881509. This producer code allowed access to Auto and Home insurance products and small business insurance products in multiple states.

36.     Upon belief, Plaintiff Merrilee Stewart's first customer's policy placed with Defendant Hartford, under producer code 33881509, was effective 12/10/2007 [name redacted], a commercial package policy 33sba1f2280.

37.     Sometime after midyear 2014 another contractual relationship was established with Defendant Hartford and TRG United Insurance, LLC under producer code 33881861. This

producer code allowed access to only the small business insurance product (emphasis) and did not include Auto or Home insurance.

38.     Upon belief, Plaintiff Merrilee Stewart's first customer's policy placed with Defendant Hartford, under producer code 33881861, was effective 11/1/2014 for insurance customer TRG United Insurance, LLC policy 33SBAUL0560.

**C. Plaintiff Merrilee Stewart's contractual relationship with Defendant Hartford as an insured small business customer/policyholder**

39.     Upon belief Non-party IHT/Firefly/RRL has been covered as a customer/policyholder under a small business insurance policy from Defendant Hartford 33SBAZJ0321 from 8/17/2009 to 8/17/2019.

40.     Plaintiff Merrilee Stewart is an insured under this policy 33SBAZJ0321 by virtue of her elected position on the IHT/Firefly Board 2007-2014 and by virtue of her minority ownership in RRL 2007 to present.

41.     Upon belief TRG United Insurance, LLC ("TRG") has been covered as a customer/policyholder under a small business insurance policy from Defendant Hartford 33SBAZJ0321 from 11/1/2014 to 11/1/2019.

42.     Plaintiff Merrilee Stewart is an insured under the TRG policy by virtue of her ownership shares in TRG from 2014 to present.

43.     The preceding insurance policies from Defendant Hartford are called Business Owners Packages, ("BOP"), and are presented to consumers as: (*See* https://www.thehartford.com/business-owners-policy)

> General Liability Insurance
>
> When it comes to liability protection, the broader the coverage the better. That's why The Hartford's BOP provides business liability insurance that helps cover your business in the event it is sued for causing harm to a person and/or damage to property. **It also helps cover the cost of your**

defense – because businesses can be sued even if they did nothing wrong.

**D. TRG United Insurance LLC was created to assist our United State Veterans. RRL Member Rodney Mayhill was an instrumental and a willing partner in the development of the company.** Member Rodney Mayhill purchased shares in the initial offering of the company ownership.

44.     Plaintiff Merrilee Stewart discussed with IHT/Firefly Board, Non-Party (Fritz Griffioen, Bill Griffioen, Rodney Mayhill and Norman Fountain), about a program to help our United States Veterans in their transition to civilian life with the opportunity to enter and learn the insurance business and ultimately owning an agency within their home town community.

45.     Fritz Griffioen and Bill Griffioen wanted nothing to do with a program for new persons entering our business because of the expense of training. They would only consider the venture if there were Federal Funding Available.

46.     In 2014 Plaintiff Merrilee Stewart decided to use her money and her independent insurance agency to sponsor and support a veteran agent employee in the State of Ohio.

47.     Rod Mayhill, who was then serving as the Director of Operations for IHT/Firefly set up a meeting with Hartford representative Doug Randolph to help secure a small business insurance appointment for our new veteran agent to access the small business insurance products.

48.     In the fall of 2014 TRG had interviewed and selected their first veteran agent prospect. Norm Fountain and Rod Mayhill both interviewed him, and he met many of the staff members at IHT/Firefly.

49.     In preparation for the possible hiring of our first employee agent, Plaintiff Merrilee Stewart wrote her first business insurance policy on the entity, TRG United Insurance, LLC, effective November 1, 2014 which is referenced in the preceding ¶ 35.

50.     Subsequently, the veteran agent prospect was not able to pass the licensing exam, therefore the program never materialized.

### E. The Claim Reports with Defendant Hartford

#### i. From the Lawsuit – reported on IHT/Firefly Policy

51.     On or about April 28, 2015 a claim, Y53 LP 06979, was submitted by Plaintiff Merrilee Stewart to Defendant Hartford under the IHT Insurance Agency Group, LLC policy referenced in ¶ 39.

52.     This claim was involving the Franklin County Common Pleas Court Case 15CV001842 filed on March 2, 2015 RRL Holding Company of Ohio LLC Et Al v Merrilee Stewart et al.

53.     The March 2, 2015 case 15CV001842, in part, alleged Plaintiff Merrilee Stewart was a thief in the amount of $19,009.44 from IHT's accounts and alleged that TRG United Insurance LLC ("TRG") was formed to directly complete and thus purportedly justified the improper attempted placement of Ms. Stewart's minority ownership shares in RRL under siege for the over four years, from January 2015 to the present time.

54.     TRG was also the sole reason given to Ohio Civil Rights for the attempted forceful sale of Plaintiff Merrilee Stewarts ownership share in RRL in IHT/Firefly's response to the June 10, 2015 charge.

> "RRL conducts no business, and each of the partners received profits only to the extent that IHT was profitable. All four partners did work for IHT, but their involvement was solely by virtue of their ownership in RRL. All income paid to Charging Party and the other partners came from distributions and payments by the RRL and was reported on a K-1 partnership tax return. Charging Party was never employed by IHT and only received compensation in her capacity as an owner of RRL shares."

> "Charging Party has no one but herself to blame for being expelled from RRL/IHT, as she is the one who started a competing entity." Quote is from The Civil Right Commission letter with respondents' Littler, Alison M. Day, Esq., letter May 2016 (R.No.177, Sept. 18, 2017 0D814)

55.     Civil Rights did not support Allisson M. Day, Esq. report:

"3) the Civil Rights Commission determination of April 7, 2017 specifically stated:

The investigation and witness testimony also substantiate she started another business; however it was not in Direct Competition with Respondent" (R.No.177, Sept. 18, 2017 Fiche: 0D814)

56.    It also well documented that RRL/IHT/Firefly have wrongfully accused minority member Plaintiff Merrilee Stewart of stealing money in their March 2, 2015 court case 15CV001842. Quoted from the Arbitration Award:

"Claimant also contends that Ms. Stewart stole $19,009.44 from IHT's accounts between December 30, 2014 and March 30, 2015, the closing date for the sale of Ms. Stewart's RRL membership units. Claimants did not support this claim with evidence." Claimant failed to cite to a contractual provision or produce evidence to the contrary. **Until the closing occurred, no transfer of membership interests could be, or had been, effected.** Further, all other departing members continued to receive their distributions following their (voluntary) withdrawals until the closing dates."

"Also, Claimant had not removed her as a signatory on the IHT bank account. **The panel thus finds that Ms. Stewart did not "steal" this money and, therefore, is not obligated to return it.**" (pg. 55, R.197 Dec.18, 2017)

57.    The purported allegations launched against Plaintiff Merrilee Stewart were in fact proven to be false and yet Defendant Hartford used the false allegations to deny coverage for Ms. Stewart.[1] Attached hereto as exhibit A.

Quoted from Hartford claims denial letter of July 8, 2015: "To the extent that there is any liability associated with conversion (Third Cause of Action) there is no coverage as those claims are subject to Section B Exclusion 1 p (3) arising out of a criminal act committed by or at the direction of the insured."

58.    Defendant Hartford also did not fulfill their duty to defend.

59.    On or about July 8, 2015 Defendant Hartford denied the claim Y53 LP 06979.

------

[1] Defendant Hartford denial correspondence of July 8, 2015 (claim Y53 LP 06979) is attached hereto as exhibit A.

60.     On or about July 20, 2015 Plaintiff Merrilee Stewart corresponded with Defendant Julie Dengler in reference to the decline letter of July 8, 2015. Excerpt:

> "Your July 8, 2015 letter to decline defense of Ms. Stewart is utilizing information solely on the plaintiffs' narrative in the lawsuit and under the assumption that the narrative is factual. There has not been any communication to Ms. Stewart or her attorney in order to gather the facts of this case."

61.     On or about March 13, 2016 Plaintiff Merrilee Stewart corresponded with Defendant Julie Dengler on claim Y53 LP 06979. Excerpt:

> "Per your request, I have attached the updates on the cases(s). Please let me know if you have any questions."

62.     On or about May 3, 2016 Plaintiff Merrilee corresponded with Defendant Julie Dengler with more updated information and a potential separate claim. Plaintiff stated: "I think this claim is separate, but I'm not sure."

63.     On or about May 27, 2016 Plaintiff Merrilee Stewart corresponded with Defendant Julie Dengler with the amended ERISA Complaint. Plaintiff stated: "Please let me know if a separate claim needs to be submitted."

64.     On or about July 16, 2016 Plaintiff Merrilee Stewart corresponded with Defendant Julie Dengler. Excerpt:

> "I am essentially an estranged owner. You had decided not to represent me in the Franklin County Court Case because our IHT attorney at the time submitted false information.
>
> That IHT attorney no longer represents us.
>
> My company consist of 6 members total, two of our members, Norm Fountain and Glenn Roulette are partially redeemed (out on a Buy/Sell) and their shares are non-voting. The other members: Fritz Griffioen, Bill Griffioen, Rod Mayhill and I are not partially redeemed or out on any Buy/Sell.
>
> Our original founder and past president was Norm Fountain and he recently brought to my attention new details on the systematic, purposeful and ongoing embezzlement of accounts payable money by LizAnn Mayhill, IHT employee and spouse of owner Rod Mayhill.
>
> I believe this to be a covered claim on our business policy.

Please let me know if you would like details."

65.    On or about July 19, 2016 Plaintiff Merrilee Stewart corresponded with Defendant Julie Dengler. Excerpt: "Can you please confirm receipt?"

66.    On or about July 27, 2016 Plaintiff Merrilee Stewart corresponded with Defendant Julie Dengler. Excerpt: "Second request. Can you please confirm receipt?"  "Also, could you please let me know if there is coverage for my adult dependent son who was improperly removed from our group health, dental and vision coverage by Fritz Griffioen."  "[] do I need to submit a separate claim?"

67.    On or about July 27, 2016 Defendant Julie Dengler corresponded to Plaintiff Merrilee Stewart stating: "We will review the complaint and perform a coverage analysis on the amended complaint."

68.    On or about July 27, 2016 Plaintiff Merrilee Stewart Corresponded with Defendant Julie Dengler.  Excerpt:

> "Thank you for your reply.
> Please feel free to contact me if you have any questions or require documentation.
> I have hundreds of documents which may help in your coverage review.
> I appreciate your assistance.
> PS: There is also a Wood County lawsuit against Fritz Griffioen, Bill Griffioen and The Griffioen that I will send to you for review."

69.    On or about July 29, 2016 Defendant Julie Dengler correspondence to Plaintiff Merrilee Stewart also went to Chris Murphy, Esq.  Chris Murphy, Esq. was working on behalf of Fritz Griffioen, Bill Griffioen and Rodney Mayhill on the cover up and concealment of the federal crimes perpetrated by IHT/Firefly and was the initial filer of the false narrative against Ms. Stewart in Franklin County Courts March 2, 2015 Case 15CV001842.  Chris Murphy, Esq. is also the Third-Party Plaintiff in Franklin County Common Pleas case 18-CV-001994, which Defendant Hartford has in their position.  Excerpt from Defendant Julie Dengler:

> "This is a lawsuit being prosecuted by you and your son against the defendants in the lawsuit. The insuring agreement of the Business Liability Coverage Form is not triggered (No bodily injury, no property damage, no occurrence, no personal and advertising injury from any offense, **we reserve right as to whether or not you qualify as an insured**)."

70.     On or about August 1, 2016 Defendant Julie Dengler again included Non-party Chris Murphy, Esq. on the correspondence to Plaintiff Merrilee Stewart.

71.     On or about August 2016 Plaintiff Merrilee Stewart corresponded with Defendant Julie Dengler about coverage for Employee Benefit Liability or sometimes referred to as EPLI. Excerpt:

> "Julie:
> The Hartford package policy has coverage for employee benefit liability.
> I fully understand the CGL does not apply, except perhaps Charles Stewart Intrusion and Retaliation, but that would still relate to Employee Benefits.
> There is also a separate EPLI policy that will pick up parts.
> In my opinion, the Employee Benefit Liability would be triggered.
> Merrilee"

72.     On or about August 1, 2016 at Defendant Julie Dengler corresponded to Plaintiff Merrilee Stewart and included James Carnes, Esq. who was working on behalf of Fritz Griffioen, Bill Griffioen and The Griffioen Agency.

> "Merrilee Did you have a different policy number? Policy number 33 SBAZJ0321 does not provide employee benefits coverage. There is a workers compensation policy, different number."

73.     On or about August 1, 2016 Defendant Julie Dengler correspondence with Plaintiff Merrilee Stewart also went to James Carnes, Esq.  Defendant Julie Dengler stated: "There is no coverage for you and your son in the prosecution of your lawsuit."

74.     On or about February 20, 2017 Plaintiff Merrilee Stewart corresponded with Defendant Julie regarding claim Y53 LP 06979 dated 4/28/2015. Excerpt below:

> "Please review the attached for claims coverage on my TRG United Insurance policy referenced above.

I am in the process preparing an objection and an appeal of the Show Cause ruling. In the process I have pulled every correspondence from you and my attorney about the notification and updates on the Hartford insurance claim submitted to you on April 28, 2015.

In the initial claims' denial, you corresponded that TRG United insurance was not an insured. However, the majority of the claims are against me personally and not TRG United Insurance. In fact, the judge entered a Stay order on TRG which will return to the courts following resolution of all other claims against me including but not limited to; theft, libel, slander and defamation.

On Friday July 29, 2016 you corresponded "we reserve right as to whether or not you qualify as an insured."

I believe that I am an insured under the IHT Insurance Agency policy with Hartford, however there is a Hartford Insurance policy for both IHT Insurance Agency and TRG United Insurance. Both policies are referenced above.

My membership interest in RRL Holding Company of Ohio, LLC is unredeemed. RRL Holding Company owns 100% of IHT Insurance Agency Group, LLC. My active involvement in the management of IHT Insurance Agency Group was 2007 to 2014. The court papers reveal both sides of the unresolved court docket."

> Defendants' original argument against arbitration was STAYED for TRG United Insurance, LLC and the courts agreed that TRG United Insurance is not a party to the Buy/Sell agreement and therefore could not be subject to the arbitration clause and "Plaintiffs' claims against TRG, including TRG's defenses, are hereby STAYED pending the resolution of the arbitration process."

> a. Excerpt from filed court information: Defendant TRG United Insurance, LLC ("TRG"), is a separate insurance agency owned by Ms. Stewart. TRG's mission is to provide United States veterans with training, guidance and support to enter and develop their own insurance agencies. Ms. Stewart, along with other investors, started TRG in 2014, with the full knowledge and cooperation of the other RRL members. Although Ms. Stewart is a member of RRL, the RRL Operating Agreement, attached as Exhibit A to the Amended Complaint, explicitly permits any and all members, including Ms. Stewart, to own and operate a business that might compete with RRL, such as TRG.

75.     On or about July 24, 2018 Plaintiff Ms. Stewart requested a teleconference and claim records for all claims from Defendant Hartford.

76.     On or about July 24, 2018 Defendant Julie Dengler corresponded with Plaintiff Merrilee Stewart about Ms. Stewarts' Request for records and Request for teleconference Y53LP 06979. Defendant Julie Dengler stated:

"Merrilee; We have issued our coverage denial and our coverage position under the IHT Insurance Agency Group LLC policy remains unchanged. We will not provide you with our work product. We consider this matter closed."

### ii. From the Lawsuit – reported on TRG Policy

77.     On or about February 20, 2017 Defendant Julie Dengler corresponded with Plaintiff Merrilee Stewart. Defendant Julie Dengler stated: "This is a new claim under a new Insured and policy number, you need to call and report a claim (1 866 467 8730) under TRG United Insurance dba: TRG United USA."

78.     On or about February 17, 2017 Plaintiff Merrilee Stewart submitted an insurance claim with Defendant Hartford under the TRG United Insurance LLC insurance policy, claim GL17249688, Y53 LP 47660.

79.     On or about May 30, 2018 Plaintiff Merrilee Stewart spoke with Defendant Tyler Smith, Esq. about specific claims issues including the excessive delay of in making a claim determination on February 17, 2017 TRG Claim Y53 LP 47660.

80.     Subsequently, Plaintiff Merrilee Stewart memorialized a written correspondence to Defendant Tyler Smith, Esq. dated June 1, 2018 regarding the claim(s) issues and requested the claims file materials. This correspondence concluded with a request for a teleconference. [2]Attached hereto as exhibit B.

81.     The only communication Plaintiff Merrilee Stewart has received back, thus far, from Defendant Tyler Smith, Esq. is his June 11, 2018 email correspondence stating: "Ms. Stewart, we have received your correspondence and will respond after we have had an opportunity to review your requests."

_____

[2] Plaintiff's correspondence to Tyler Smith, Esq. dated June 1, 2018 regarding the claim(s) issues is attached hereto as exhibit B.

82.    Plaintiff Merrilee Stewart has followed up in writing three times, and as of January 21, 2019, more than 7 months later, there still has been no response from Defendant Tyler Smith, Esq.

83.    The most recent court event, motion to show cause, is the result of the attorney representing Defendant Hartford and her decisions to remain silent and unresponsive to Plaintiff's motions.

84.    It took over a year (February 17, 2017 to July 18, 2018) for Defendant Hartford to even render the claim Y53 LP 47660 determination for TRG, and the determination of Defendant Anne Trevethick's July 18, 2018 correspondence was not accurate.

85.    Spanning from Plaintiff Merrilee Stewart's March 26, 2018 email correspondence to Defendant Julie Dengler (2) to the email from Defendant Anne Trevethick (3) on July 24, 2018, Plaintiff Merrilee Stewart was officially provided with three different claims adjusters with whom she should correspond.

86.    Defendant Hartford's first official responsive determination to the February 17, 2017 TRG United Insurance LLC claim Y53 LP 47660 (no response for 1 year and 5 months), was received, 1 year and 5 months (17 months) later, from Defendant Anne Trevethick on July 18, 2018. [3] Attached hereto as exhibit C.

87.    Defendant  Anne  Trevethick's  responsive  determination  and  denial correspondence of July 18, 2018 attempts to use a back dated occurrence date that holds no relevance to the claim Y53 LP 47660.

88.    Defendant Anne Trevethick's corresponded of July 18, 2018 on claim number Y53 LP 47660 contains a false and incomplete narrative in the Summary of the allegations.

_____

(3) Hartford's determination for (Y53LP47660) of July 18, 2018 is attached as exhibit C.

89.     More than three years of litigation have transpired since the March 2, 2015 Case 15CV001842 and yet the coverage analysis of Defendant Anne Trevethick left out large gaps (emphasis) of court filings pertinent to TRG including additional allegations and court appearances just in the Franklin County Common Pleas case alone.

90.     These additional allegations launched at Plaintiff Merrilee Stewart are involving Defendant Hartford and were as a result of the inaction and the failure on the part of Defendant Hartford to support their customer, Ms. Stewart, in her duty to report (Emphasis).

91.     Defendant Hartford is fully aware that it would be impossible to trigger any occurrence date prior to November 1, 2014 as to TRG, because they possess all records and full knowledge of TRG activity.

92.     Defendant Hartford's own marketing representative, Doug Randolph, was involved in the processing of small business insurance access for TRG from the meetings with Non-party RRL member Rod Mayhill and Plaintiff Merrilee Stewart.

93.     Multiple affidavits supporting the fact of Rod Mayhill's involvement in TRG United Insurance as a shareholder is undisputed.  Including the following direct statements from affidavits:

> 1) "Rod Mayhill, George R. Nelson COL USA (Ret), Merrilee Stewart and I had several discussions about teaching veterans the insurance business and developing them into agents. We had these meetings after hours, while some occurred during business hours. Rod Mayhill, George R. Nelson COL USA (Ret), Merrilee Stewart and I all agreed to be shareholders in TRG United Insurance…" (Aff. S. Holdsworth Oct. 6, 2017 R.No's.199 to 216, Jan. 3, 2018),
>
> 2) "Rod Mayhill, Seth Holdsworth, Ms. Stewart and I were part of frequent after business hours discussions, and sometimes during the day, about teaching the insurance business to veterans, particularly service disabled veterans. I recall that Rod Mayhill stated that he would help in that endeavor, frequently citing his Air Force Veteran Experience. I recall that he became a shareholder in TRG United Insurance.
> I also recall that Rod Mayhill stated that Bill Griffioen and Fritz Griffioen would not have anything to do with helping any potential veteran agent unless federal

funding was available to support the program." (Affidavit of George R. Nelson Col (Ret) Oct 31, 2017 R.No's.199 to 216, Jan. 3, 2018),

3) "Rod Mayhill (a partner) was part of TRG United Insurance. He was a shareholder. He helped me with advice on the presentation to the employees and picking out the background. He talked to the website developer. He met with the first Veteran Prospect, Troy Earnsburger. He was part of many meetings about TRG. He added TRG United Insurance to our E & 0 carrier and he helped in setting up the commercial carrier appointment. (Affidavit of Alessandra Jo Vaccaro Oct. 29, 2015 R.No's.199 to 216, Jan. 3, 2018)

94.     If Defendant Hartford had investigated the February 17, 2017 TRG United Insurance LLC TRG claim Y53 LP 47660 then they would not have used the incorrect occurrence date for the denied letter at the facts would clearly be established by their very own marketing representative Doug Randolph and their own records.

95.     On or about August 12, 2018 Plaintiff Merrilee Stewart supplied Defendant Anne Trevethick with the Appellate Court briefing which details a proven false complaint and amended complaint, which has been solely relied upon by Hartford in the wrongful denial for all claims (emphasis).

96.     Plaintiff Merrilee Stewart also communicated in writing the same message of action required as was referenced above, to Defendant Tyler Smith, Esq., Hartford General Liability Claims Manager.

97.     TRG United Insurance, LLC ("TRG"), a multi-member corporation that includes RRL member Rod Mayhill, Ms. Stewart and others were not represented at Arbitration because Plaintiffs' claims against TRG, including TRG's defenses, were hereby STAYED pursuant to Judge Kim Brown's order of November 10, 2015, pending the resolution of the arbitration process.

98.     This clearly puts the cart before the horse because the purported cause for removal of Merrilee Stewart was TRG, and Defendant Hartford and their marketing representative Doug Randolph, had full knowledge of the TRG meetings with Rodney Mayhill

and Plaintiff Merrilee Stewart, and Doug Randolph possesses the actual verification that TRG never competed.

99.     Defendant Hartford has records that TRG never even wrote a policy of insurance during the time of the scorching, retaliation and attacks documented immediately following the September 2014 RRL / IHT meeting where Plaintiff Merrilee Stewart insisted on correction of the at-risk business practices identified by attorney, Christopher Murphy, Esq.

100.    Notwithstanding these facts, Defendant Hartford and their marketing representative Doug Randolph also had full knowledge that all members were allowed to compete per the operating agreement of RRL and IHT.

101.    RRL, IHT/Firefly initial Complaint acknowledged that the operating agreements for RRL and IHT specifically permit members of each company to compete with the company.

102.    On May 4, 2015 In the amended complaint of RRL, IHT/Firefly they presented this false statement to the courts. RRL, IHT/Firefly altered their statement to the trial court:

> 19. While RRL's original operating agreement permitted members to compete with RRL, this provision was superseded by a Buy/Sell Agreement executed by the members of RRL on September 5, 2012. A copy of the Buy/Sell Agreement dated September 5, 2012, is incorporated by reference and attached hereto ……"
>
> 20. After adopting the terms of the Buy/Sell Agreement the only permissible competition by a member of RRL was continued participation in a competing entity that existed prior to the adoption of the Buy/Sell Agreement on September 5, 2012.

103.    RRL, IHT/Firefly failed to provide the restated Operating Agreement that was prepared simultaneously with the Buy/Sell Agreement of September 5, 2012 (emphasis).

104.    In the restated Operating Agreement of RRL the ability to directly compete was re-numbered and repeated.

> "Pursuant to page 13 of the restated RRL Operating Agreement: §6.4.2. Except as otherwise expressly provided in Section §6.4.3, nothing in this Agreement shall be deemed to restrict in any way the rights of any Member, or of any Affiliate of any Member, to conduct any other business or activity whatsoever, and the

> Member shall not be accountable to the Company or to any Member with respect to that business or activity even if the business or activity competes with the Company's business. The organization of the Company shall be without prejudice to their respective rights (or the rights of their respective Affiliates) to maintain, expand, or diversify such other interests and activities and to receive and enjoy profits or compensation therefrom. Each Member waives any rights the Member might otherwise have to share or participate in such other interests or activities of any other Member or the Member's Affiliates."

105. This RRL Operating Agreement was restated by RRL IHT/Firefly attorney Christopher B. Murphy, Esq. to incorporate with the just completed "Buy/Sell Agreement", however the attorney choose to present false information to the tribunal (emphasis).

106. RESTATED for emphasis: The IHT Operating Agreement, The RRL Operating Agreement and the restated RRL Operating Agreement all allowed the Members to Directly Complete.

107. The TRG court case continues to remain in the "stayed status" pending the outcome of Arbitration, currently at the Ohio Supreme Court.

108. Plaintiff Merrilee Stewart communicated in writing of the importance of action starting with Hartford claims adjuster Julie A Haick, then Scott Locurto, then Kathleen Ross and finally Defendant Anne Trevethick.

109. Defendant Hartford took one year and five months (17 months) to even make a determination on claim Y53 LP 47660.

110. Defendant Harford failed to investigate claim Y53 LP 47660.

111. The delay alone, no response for 1 year and 5 months (17 months), may constitute "Bad Faith" by Defendant Hartford.

112. Admittedly, Defendant Hartford Insurance is required to conduct a complete, thorough, independent, and timely (emphasis) investigation of the claim.

113.    The attempts to disconnect the prior improperly denied claim Y53 LP 06979 of April 20, 2015 and then solely rely upon the very same initial pleadings occurring in 2015, is contradictory and ignores the current facts of the case.

114.    While it is understandable to have multiple claim investigators for the different entities, the inter-communications are essential to a proper investigation.

115.    Defendant Julie Dengler knew about the separate insurance policy with Hartford covering TRG United Insurance, just as she knew about the EPLI coverage (claim Y53 L 11253) with Defendant Hartford when she was supplied with the ERISA lawsuit.

116.    Defendant Anne Trevethicks' July 18, 2018 correspondence is not factual in her Summary of the Allegations of the Pleadings and Other Background which makes her denial of coverage not valid.

117.    First, the original denial of coverage under the initial claim of April 28, 2015 Y53 LP 06979 was purported that attempted removal from RRL was because Plaintiff Merrilee Stewart started a competing company TRG.

118.    Thus, Defendant Julie Dengler said Plaintiff Merrilee Stewart was not insured because she was acting on behalf of TRG.

119.    However, TRG was not a part of arbitration, nor is TRG under an agreement to arbitrate.

120.    Thus, the Arbitration panel used the following reason why Plaintiff Merrilee Stewart should be forced to involuntarily sell her minority shares in RRL.  The award determination is quoted:

> "October 23, 2014, Ms. Stewart sent an e-mail to Bill and Fritz and IHT's lawyer, Christopher Murphy, outlining Rod's sexual harassment of an employee, Taylor Arnold" (R. 0D941 - R20)

> "Thus, the panel concludes that Ms. Stewart made false and damaging defamatory remarks about another member to the remaining members of the Company. These remarks alone justify her involuntary withdrawal []." (R. 0D941 - R21)

> "Her unfounded, false, and defamatory allegations against a fellow member, Rod, justified the decision of the remaining members to remove her." (R. OD941-R22)

121.    Section 7 of the Buy/Sell Agreement is headed "§7. Involuntary Withdrawal". The events of involuntary withdrawal (a) through (i) of the Buy/Sell Agreement mirror those of Ohio Revised Code Section 1705.15 (A) through (J). Section 7 (m) of the Buy/Sell Agreement, however, adds events of involuntary withdrawal which is not found in O.R.C. §1705.15.

122.    The Arbitration Award misquoted section from 7(m)(iv) of the Buy/Sell which says "{iv} Any reckless or willful misrepresentation by the Member to the Company, or any Designated Carrier". This Section 7(m) of the Buy/Sell Agreement not only does not appear in O.R.C. §1705.15, and it also does not appear in the company's Operating Agreement (emphasis). Repeat, does not appear in either referenced document.

123.    The protected activity of reporting a workplace sexual harassment claim (whether ultimately true or false) is not cause for removal of Ms. Stewart under 7(m)(iv) of the Buy/Sell.

124.    The Arbitration Award stated:

> "the members' decision to withdraw her involuntarily is separately justified by her multiple "reckless and willful misrepresentations" about her fellow member, Rod Mayhill, to the rest of the members of the Company." (R. OD941-R19)

125.    Nevertheless, Plaintiff Ms. Stewart was reportedly removed as a member of RRL Holding Company of Ohio, LLC, pursuant to subsection 7(m)(iv) of this Section for reporting a sexual harassment claim of an employee that purportedly was false against Rod Mayhill.

126.    It is the duty of any business owner, partner, manager, supervisor, employee, etc., in any company or corporate position to report claims of sexual harassment for investigation and resolution, without fear of retaliation, loss of employment, livelihood and destruction of personal and professional reputation (emphasis).

127. The real reason, and now documented and collaborated, for the seizure of Plaintiff Merrilee Stewarts ownership rights, and the attempted forced sale, was to cover up, conceal and avoid restitution for the hundreds of embezzlement victims, the hundreds of victims of the mail fraud scheme and the thousands of customers who were discriminated against with the boycotting of access to auto and home insurance because they failed to meet IHT/Firefly's "Affluent Middle Class Rule".

128. Defendant Anne Trevethink's July 18, 2018 denial of coverage correspondence then incorrectly says:

> "On December 11, 2017, after a three-day hearing held earlier that year, a three-member arbitration panel issued the following Final Award: (I) determining that Stewart was properly removed as a member of RRL effective 12/30/14"

129. This statement by Defendant Anne Trevethick involving ownership interest of Plaintiff Merrilee Stewart are not correct. Plaintiff ownership in RRL are property rights pursuant to the Ohio Revised Code § 1705.17 and Plaintiff Merrilee Stewart still retains her minority ownership interest in RRL.

130. The arbitration panel clearly stated until the closing occurs, no transfer could be, or had been affected. Quote is below:

> "Ms. Stewart believed that she was still a member of RRL until, at least, the closing date of March 30, 2015, and Claimant failed to cite to a contractual provision or produce evidence to the contrary. **Until the closing occurred, no transfer of membership interests could be, or had been, effected**" (emphasis). (pg. 55, R.197 Dec.18, 2017)

131. Furthermore, if RRL had ever intended to buy Plaintiffs ownership shares they would have provided the closing documents and a closing location. However, instead they filed a lawsuit to scorch, retaliate and utilize squeeze out/ freeze out tactics that are clearly prohibited by law.

132.     The allegations in the trial court case filed March 2, 2015 attempted to present Plaintiff Merrilee Stewart in a False Light as a "thief", by the purported theft of money in the amount of $19,009.44 in breach of her fiduciary duty.

133.     All parties were fully aware that Plaintiff Merrilee Stewart was entitled equal member distributions and was granted full banking authority to process the equal distribution of $19,009.44.

134.     This egregious accusation about Plaintiff Merrilee Stewart presented her is a false light before the public, within the business community and in the courts.

135.     The Arbitration Award confirmed this was, yet another false statement made to the tribunal and to Ms. Stewart business associates. The trial court record is quoted below.

> "Also, Claimant had not removed her as a signatory on the IHT bank account. **The panel thus finds that Ms. Stewart did not "steal" this money and, therefore, is not obligated to return it**." (pg. 55, R.197 Dec.18, 2017)

136.     The denial of coverage under the initial claim of April 28, 2015 Y53 LP 06979 is proven to be based upon false information in that Defendant Julie Dengler purports Plaintiff does not qualify as an insured as she is being sued in her individual capacity and as owner of TRG United Insurance LLC. Quoted below:

> Quoted from Hartford claims denial letter of July 8, 2015: "Merrilee Stewart does not qualify as an insured as she is being sued in her individual capacity and as owner of TRG United Insurance LLC. The insuring agreement is not triggered. Merrilee Stewart, etal would qualify as an insured only with respect to the conduct of the business of IHT Insurance Agency Group LLC."

137.     It is not plausible to assert the reporting of sexual harassment by Plaintiff to fellow board members and the corporate attorney was not acting in the capacity of IHT. Nor is it plausible that a disbursement of equal distributions and benefits, with subsequent notification to accounting and full banking authority, is not acting in the capacity of IHT.

138.    On or about July 18, 2018 Defendant Anne Trevethick correspondence with Defendant Stewart included an offer to pay attorney fees from March 2, 2015 to May 14, 2015.

> "Despite the Hartford's coverage determination, solely as a business accommodation to our insureds and without waiving any of The Hartford's rights and defenses, The Hartford will agree to reimburse Stewart and TRG for all reasonable fees and expenses incurred in defending the Complaint between the filing of the initial Complaint, 3/2/15, and the filing of the FAC, 5/14/15."

139.    Defendant Hartford errored in their handling in the initial claim of April 28, 2015 a claim, Y53 LP 06979.

140.    Defendant Hartford errored in the handling of this February 17, 2017 TRG United Insurance LLC claim Y53 LP 47660 (no response for 1 year and 5 months) , in part by: 1) failure of their duty to properly and adequately investigate the claim; 2) failure in their duty to investigate all reasonably available sources (emphasis) of information; 3) failure in their duty to timely and promptly investigate; 4) failure in their duty to communicate with the insured during the claim process; 5) failure of the duty to defend; 6) and failure in their contractual duty of the covenant or promise of good faith and fair dealing.

### iii. From the Systemic Embezzlement of over 8 million dollars

141.    On or about July 18, 2016 an Employee Dishonesty claim on the systemic systematic embezzlement scheme that originated in 2005 at the hands of IHT/Firefly employee Lizabeth Mayhill was filed (for the years 2009-2014) with Defendant Hartford claim CP16918233.

142.    On or about July 19, 2016 an Employee Dishonesty claim on the systemic systematic embezzlement scheme that originated in 2005 at the hands of IHT/Firefly employee Lizabeth Mayhill was filed for the years prior to 2009 with Non-Party Liberty Mutual.

143.    On or about July 27, 2016 Columbus police economic crime division complaint was filed reporting the systemic systematic embezzlement scheme that originated in 2005 at the

hands of IHT/Firefly employee Lizabeth Mayhill as is required by the insurance contract, repeat, as is required, complaint 163056538.

144.    This Columbus Police report was a detailed White-Collar Crime Report and included documented victims of the embezzlement scheme, the mail fraud scheme and redlining practices harming the supplier/agents and thousands of customers.

145.    On or about July 19, 2016 Plaintiff Merrilee Stewart corresponded with Defendant Hartford regarding answers to the employee dishonesty claim CP16918233 submitted on July 18, 2016. Excerpt of the correspondence appears below:

> "The answers to each question appear below (in Red). Many items require documentation or perhaps clarification. Please feel free to contact me for additional information or questions. I appreciate your review of this claim."
>
> *What was the actual date in which this loss was first discovered?  Explain any delay in reporting the loss.*
>
> "This loss was known to The Hartford and reported to The Hartford on 4/28/2015 and was part of my counter claim in that Franklin County Ohio court case. However, the claim representative, Julie Dengler, will not acknowledge receipt of or respond to any of the legal updates that I email to her.  Therefore, I am not even certain if she still works for The Hartford.
>
> I originally thought it was about $1,000,000.00. However, now, with the additional information supplied to me by our original founder and past president, Norman L. Fountain and the witness testimony of Kathy Fountain, Norm Fountain and others, it appears to be between $5,000,000.00 to $10,000,000.00
>
> Commission payments from the new management system started in September 2015.  At this time policies showed up that had never before been paid on.  None of the back commission due were included.
>
> Then in July 2016 our founder and past president, Norman L. Fountain, provided me the documentation of the systematic, purposeful and continued embezzlement of millions of dollars out of our accounts payable obligations by Lizabeth Mayhill going back to the beginning (2005).  This is the first that I realized full extent of the employee dishonesty and how massive the amount was."

146.    Defendant Julie Dengler had full knowledge of and documented collaboration on the systemic embezzlement of millions of dollars of agent commissions (July 2016 claim

163056538) and the ongoing active insurance redlining and boycotting of segments of our predominately underserved communities.  Embezzlement/Employee Dishonesty report attached.

147.    On or about June 8, 2018 Defendant Julie Dengler made a claim file note about Plaintiff Merrilee Stewart stating:

> "attempted to file an embezzlement claim under the IHT Insurance under claim: CP 0016918233 which was closed no pay and closed at insured requests she had no authorization to file such claim"

148.    Wherefore the systemic embezzlement of over $8,000,000 facilitated by Lizabeth Mayhill is documented to have started in 2005 and therefore there is standing for all owners (emphasis), repeat, all owners, during those years to make a claim for employee dishonesty and initiate prosecution of the employee.

149.    This Hartford Employee Dishonesty claim CP16918233 is for the years 2009-2014, and as of now Norman L. Fountain has joined in the US District Court case and as an informant for the Federal Bureau of Investigation and the Department of Justice in Washington, D.C.

150.    Plaintiff Merrilee Stewart and Norman L. Fountain have equal standing to report Employee Dishonesty, as does Glenn P. Roulette, for the years 2005 to 2011.

151.    Furthermore, the existence of the thousands of "unknowns" was documented by the former IHT/Firefly/RRL attorney Christopher B. Murphy, Esq. in his "at risk" business evaluation in 2013 which is also contained in the trial court records March 2, 2015 Case 15CV001842.  This is also collaborated by the original founder and past president of IHT/Firefly Norman L. Fountain.

> October 2, 2018 Collaborating Sworn Affidavit of Norman L. Fountain, Excerpt:
> "By April 2013 all members were confronted with the realization of the accumulation of "unknowns" (Commissions owed but not paid) when attorney Murphy supplied the "active" and "in-force" listing showing 1,426 "unknowns"

(Commissions owed but not paid) totaling over \$1,274,347.00 in premium. This report was supplied in preparation for the sales of Speedy Auto Insurance to me. These unknown commissions owed should have been placed in a separate account, pending identification of the rightful owner of the money. However, this was never done. The funds were distributed to the partners as "Distributions". This was pure and simple theft of the commissions owed.

Right now, the totals of unknown and / or orphan transactions is 8,911 with an estimated premium value of \$8,404,739.63. With approximately 40 percent of our business being semi-annual autos, the premium renews twice per year."

152. The trial court records and the current US District Court counterclaim against IHT/Firefly and Fritz Griffioen, Bill Griffioen and Rodney Mayhill contain numerous collaborating affidavits of victims, some of which are shown in part below:

November 30, 2018 Collaborating Sworn Affidavit of *William Turnbull*, Excerpt: "There where insurance policies written through IHT that had been classified as "unknowns." Policies classified as "unknowns" were policies issued through IHT by producers that did not match. This unknown classification resulted in some unpaid commissions to writing producers. As the Michigan Business Coordinator contracted by IHT to help develop Michigan I received an overwrite commission of policies issued through IHT from other Michigan agencies/Producers that I helped develop, train and offer assistance to. As a result of IHT classifying certain policies as "unknowns" this has caused financial harm to me as a producer and Michigan Business Coordinator, my agency producers, and other Michigan producers."

October 17, 2018 Collaborating Sworn Affidavit of *Michael W. Denys*: Unknown accounts identified causing financial harm to me and my agency. The unknown accounts identified to date, resulting in unpaid commissions to me over the last 10 years of over \$27,000, has also caused financial harm to me and my agency. I suspect there are additional commissions owed to me.

October 31, 2018 Collaborating Sworn Affidavit of *Kevin Becker*
Excerpt: "I did receive a harassing letter from attorney James R. Carnes.
My insurance agency suffered harm because of the unpaid commissions. The current amount in damages to my agency is estimated at over \$90,000."

October 31, 2018 Collaborating Sworn Affidavit of *Ted Lewicki*
Excerpt: "The unknown accounts identified as my customers, resulting in unpaid commissions has caused financial harm to me and my agency."

October 2, 2018 Collaborating Sworn Affidavit of *Norman L. Fountain*, Excerpt: "I am a victim of financial and professional harm by IHT Insurance, Fritz Griffioen, Bill Griffioen, Rod Mayhill and their attorney. I also enjoin with Merrilee Stewart as an additional informant and whistleblower with all investigations and court action.

I began going through records to work with Merrilee Stewart to determine the extent of the accounts payable obligations. Simultaneously we discovered more and more unpaid accounts belonging to my agency.

Part of these records revealed the unknowns going back to the beginning, in 2005. LizAnn would put an "??" beside the commission entry instead of the producing agents name. Then again, she also never bothered to look in the agent transaction system or on the actual policy to see who the correct agent was.

> Email from LizAnn, RE: Safeco September 6, 2007: "Usually, I will send out one or two emails asking who wrote something. After that I mark it on my form with ?? and leave it sit until someone claims it. On the commission statements I have no idea what state the customer lives in. If I get mail in with the address, I can let you know those."

LizAnn references her form marked with"??" to designate unknowns. LizAnn's form is the All Written excel spreadsheet that she prepared and distributed monthly from 2005 to 2011. This spreadsheet was used by the employees who handled the mail and electronic communications that needed to be sent to the producing agents.

Most importantly, the commissions owed to our producer agents that were never paid out to them were not held in a separate account pending identification. They were distributed to the partners, who were fully aware of this being the transfer of money that belonged to producing agents, thus stealing the money instead of holding to be paid to rightful owner.

Safeco Insurance is a carrier that we now have a record of 1,220 "unknowns" and yet the proper producing agent is listed on every policy in the Safeco system. LizAnn not only refused to look up the proper agent to pay the required commission, she was a direct recipient of the benefits derived by the refusal to pay the commissions owed. This was in the form of increasing distributions of profits to her husband, Rod Mayhill, a partner in RRL

153.    Defendant Julie Dengler took the now proven perjured affidavit of Fritz Griffioen, a minority owner of RRL, and closed the claim without any investigation. This perjury of Fritz Griffioen in his affidavit was used to interfere with Defendant Hartford's investigation, the Police Investigation and the Franklin County Common Pleas Show Cause hearing. This perjured affidavit of Fritz Griffioen is collaborated by the original founder and past president of IHT/Firefly Norman L. Fountain.

> October 2, 2018 Collaborating Sworn Affidavit of Norman L. Fountain, Excerpt:
>
> "The affidavit, by Fritz Griffioen, stating the "Unknowns were totally false" is document and proven to be a false statement and Fritz Griffioen knew his affidavit was false when he signed it. The disparagement of Merrilee, attempting to call her a thief for taking her equal distribution is also now proven to be false. However, this affidavit and the interference it caused with the investigation at the

hands clearly obstructed justice and concealed the theft of millions of dollars of commissions owed by IHT. Again, this was a sworn affidavit from Fritz Griffioen facilitated and forwarded to the Columbus, Ohio police department by his attorney, Jamie Carnes of Shumaker, Loop & Kendrick. This is clearly subordination of perjury by Jamie Carnes, Esq."

154.    Defendant Julie Dengler is not correct that Plaintiff Merrilee Stewart had no authorization to file such claim, as there is no dispute of Ms. Stewart's standing in a management positions at IHT/Firefly 2007-2014 and her minority ownership shares in RRL memorialized in 2007, remaining unredeemed today (January 31, 2019).

155.    In addition, Plaintiff Merrilee Stewart is a victim of the embezzlement scheme, as are hundreds of other supplier/agents.

### iv. The unknown loss report for EPLI and Ohio Civil Rights

156.    IHT's EPLI claim for Merrilee Stewart under claim: Y53 L 11253, Unknown Date and unknown disposition

157.    On or about June 8, 2018 Defendant Julie Dengler made a claim file note about Plaintiff Merrilee Stewart stating: "IHT had an EPLI claim for Merrilee Stewart under claim: Y53 L 11253"

158.    Upon information and belief Plaintiff Merrilee Stewart may be the unknown claimant under claim: Y53 L 11253.

159.    This may have triggered the Defendant Hartford to hire Alison M. Day, Esq. in responding to the Ohio Civil Rights Complaint of June 10, 2015.

160.    Alison M. Day, Esq. wrongfully attacked Plaintiff Merrilee Stewart with her Ohio Civil Rights response.

161.    The laws in Ohio protect the minority owner of a close corporation from the oppression of the majority.   The Ohio Supreme Court in the seminal case *Crosby v. Beam*, 47

Ohio St. 3d 105 (1989) set forth protections for Ohio minority shareholders including the heightened fiduciary duty for the minority shareholder as an exception to the at-will doctrine.

> The Ohio Supreme Court defined "the standard of a duty to be of the "utmost good faith and loyalty." The Court held "a majority shareholder has a fiduciary duty not to misuse his power by promoting his personal interests at the expense of corporate interests." The Ohio Supreme Court found that Ohio Courts of equity "will grant appropriate relief where the majority or dominant group of shareholders act in their own interest or in the interest of others so as to oppress the minority or commit fraud upon their rights."
> *Crosby v. Beam*, 47 Ohio St. 3d at 108-109.

162.    Allison M. Day Esq. choose to mislead the Ohio Civil Rights commission with her false and misleading statements revealed only after Plaintiff Merrilee Stewart was able to obtain Ms. Day, Esq. civil rights response years later through a public records request.

163.    By way of example, the ERISA case is fraud upon the rights of Ms. Stewart. The case also includes violations of multiple rights of Charles Stewart, who was an employee at IHT/Firefly and is protected by the America Disabilities Act.   See U.S. District Court Southern District of Ohio (Columbus) Civil Docket Case #2:16-cv-00210-JLG-KAJ. *Merrilee Stewart and Charles Stewart vs IHT Insurance Agency Group Welfare Benefits Plan and RRL Holding Company of Ohio and The Griffioen Agency, LLC.*

> The Hartford employee dishonesty coverage form includes ERISA and states:
> "3. Additional Coverages
> c. Welfare and Pension Plan ERISA Compliance
> In compliance with certain provisions of the Employee Retirement Income Security Act (ERISA): 1. For the purposes of this insurance, the following are added as Named Insureds under this Employee   Dishonesty Coverage: (a) Any Employee Welfare Benefit Plan, or (b) Any Employee Benefit Pension Plan (hereafter called Plan) owned, controlled or operated by you and which you provide solely for the benefit of your employees."

164.    Alison M. Day Esq. presented false information to Ohio Civil Rights Commissions.

165.    Defendant Julie Dengler has stated that IHT/Firefly has an EPLI claim under claim: Y53 L 11253.  Plaintiff Merrilee Stewart does not know the date of the claim or the

disposition of the claim. In addition, Ms. Stewart has never been contacted by any claim representative regarding this EPLI claim.

166. However, the Ohio Department of Insurance ("ODI") just recently sent the improper cancellation of benefits over to their fraud division because Fritz Griffioen had reported to the ODI that he acted as Plaintiff Merrilee Stewart's employer, at Non-Party IHT/Firefly, when he requested Medical Mutual cancel coverage for her and her adult dependent son for the stated reason "no longer an employee". Plaintiff Merilee Stewart was never an employee of IHT/Firefly nor an employee of Fritz Griffioen (emphasis). Ms. Stewart was and remains an unredeemed member owner of RRL. Benefits are solely as a result of her ownership interest.

167. Upon belief Defendant Hartford, by way of Allisson M. Day, Esq. from Littler, representing Non-Party IHT/Firefly, confirmed to Ohio Civil Rights that Fritz Griffioen and IHT were never employers of Plaintiff Merrilee Stewart and that benefits were solely because of her ownership in RRL.

168. Fritz Griffioen falsely claimed he was Ms. Stewart's employer and reported to Medical Mutual she was "no longer an employee" and cancelled Defendant Merrilee Stewart and her dependent son's group benefits in January 2015, even though as of today January 30, 2019 Defendant Merrilee Stewart continues to retain her minority ownership interest in RRL.

169. Allisson M. Day, Esq also confirmed, no owner was required to work at IHT/Firefly and no owner received any benefits as a result of any work at IHT/Firefly.

170. Further, Ms. Day, Esq. reported that Ms. Stewart was granted the option to take over her life insurance benefit of $1,000,000.00. However, this statement to Ohio Civil Rights by Ms. Day was subsequently proven to be false.

171. Alison M Day, Esq. was also the attorney on the FLSA case Art Mann. Plaintiff Ms. Stewart attended the Mediation with Alison M. Day. Allison M. Day, Esq. was also well aware of the many victims of FLSA violations occurring at IHT/Firefly.

172. As has been established in the preceding ¶¶41, Defendant Hartford maintained a contractual relationship with IHT/Firefly for the distribution of Auto and Home Insurance.

173. Documentation supplied to the Ohio Department of Insurance in February 2015, Ohio Civil Rights in June 2015 and the Franklin County Courts in case 15CV001842 include Defendant Hartford as a preferred carrier with IHT/Firefly. Board (Fritz Griffioen, Bill Griffioen and Rodney Mayhill) instituted discriminatory rules for their hundreds of supplier/agents which withheld access to auto and home insurance products and services in predominately underserved communities in violation of Fair Housing Act and anti-trust law, using Hartford as the preferred carrier.

174. Upon information and belief Defendant Hartford has a vested interest in not defending Plaintiff Merrilee Stewart, who in her position as President of IHT/Firefly for approximately one year (2013-2014), attempted to make corrections to the at-risk business practices that were identified by attorney Christopher Murphy. This attempt by Plaintiff Merrilee Stewart to implement corrective action resulted in retaliation, scorching tactics and the attempted seizure of her ownership property rights.

175. IHT/Firefly as a distributor of Auto and Home Insurance on behalf of Defendant Hartford does business in 24 states, according to their current Facebook page.

176. The McCarran-Ferguson Act of 1945 (15 U.S.C.A. § 1011 et seq.) gives states the authority to regulate the "business of insurance". The act does not define, the key phrase, "the business of insurance".

177.    There exists an anti-trust carve out for boycotting, intimidation and coercion. How insurance companies distribute their products and services is not "the business of insurance".

178.    As is collaborated in the following ¶¶183-195, portions of this case involve the violation of Federal Antitrust Laws in the boycotting, coercion and intimidation of target segments of customers under the Sherman Act and the Clayton Act.  This refusal under the Sherman Act to allow intimidation, coercion, or boycott in any form was preserved in section 3 of the McCarran Act, 15 U.S.C. § 1013(b) (1970).

179.    The Sherman Act, the Clayton Act, and the Federal Trade Commission Act is applicable to the "business of insurance" to the extent where: (2) there are insurer or acts of, "boycott, coercion, or intimidation" [§ 1013].  § 2 of the Act further prohibits monopolization or attempts at monopolizing any aspect of interstate trade or commerce and makes the act a felony. See *Transnational Insurance Company v. Rosenlund,* 261 F. Supp. 12, 27 [D.Or. 1966]. "The word `boycott' as used in this type of legislation, implies an urging or an agreement with another person to desist from doing business with another."

180.    The "generic concept of boycott refers to a method of pressuring a party with whom one has a dispute by withholding, or enlisting others to withhold, patronage or services from the target." See *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 541 (1978). McCarran-Ferguson's legislative history shows that the boycott exception was seen as an "important safeguard against the danger that insurance companies might take advantage of purely permissive state legislation to establish monopolies and enter into restrictive agreements falling outside the realm of state-supervised cooperative action." Id. at 547.

181.    Our United States congress passed laws establishing federal jurisdiction over crimes that "affected" interstate commerce, no matter how indirectly, in such areas as civil rights.

A portion of this case deals with discrimination under the Civil Rights Act and The Fair Housing Act. See *Mackey v. Nationwide Ins. Cos.*, 724 F.2d 419 (4th Cir. 1984). The court found that the activity fell within the antitrust exemption, but that McCarran-Ferguson did not foreclose a claim under the Fair Housing Act (emphasis) or Civil Rights Act (emphasis).

182.    The fundamental reason for government regulation of interstate commerce is to protect the American consumers.  The Preamble to the Constitution of the United States of America includes to establish justice and promote the general welfare (emphasis).

> "We the People of the United States, in Order to form a more perfect Union, establish Justice, insure domestic Tranquility, provide for the common defense, promote the general Welfare, and secure the Blessings of Liberty to ourselves and our Posterity, do ordain and establish this Constitution for the United States of America."

183.    The magnitude of the withholding (boycotting) of products and services to entire segments of our citizens, predominately in our underserved communities who do not meet the "Affluent Middle Class" rules, has national significance when considering that there are about 222 million licensed drivers and 126 million households in the United States.  These "Affluent Middle Class" rules are forced upon hundreds of supplier/agents throughout many states by the controlling aggregator IHT/Firefly.

184.    Responsibility should land squarely in the hands of the States to properly regulate. However, the record on appeal clearly demonstrates and collaborates the ineptitude of the regulatory organizations responsible for the welfare of our citizens.

185.    These acts of boycotting segments of our citizens from access to insurance are aided in part by corporate counsel within the insurance aggregators/clusters and encouraged in part by national insurance carriers.

186.    In addition to redlining and violating the Fair Housing Act, the "illegal steering of clients" is in violation of business law, as it was prosecuted by Eliot Spitzer in the case of *New York v Marsh* of which Marsh paid 850 Million.

> "In all cases, clients make the final decision on the [insurance company] chosen to handle their business." New York v. Marsh & McLennan Companies, and Marsh, Inc. [Marsh-NY 32815]. 23. In many instances, however, the client is making a misinformed "final decision" on insurance coverage." "The insurance industry needs to take a long, hard look at itself," Spitzer said. "If the practices identified in our suit are as widespread as they appear to be, then the industry's fundamental business model needs major corrective action and reform."

187.    The unlawful restrictions placed upon the producing agents restricting the sale of insurance products to specific segments of our citizens, caused substantial harm to the agents and even more harm to the customers.  As for holding the companies legal counsel accountable See, e.g., *United States v. Park*, 421 U.S. 658 (1975) (holding that a corporate agent in a responsible relation to the commission of an offense may be convicted of the offense that dispenses with the consciousness of wrongdoing).

188.    It is noteworthy that Defendant Hartford is listed under the preferred carrier discriminatory requirements by IHT/Firefly in violation of Fair Housing Act and Anti-trust law:

> Rod Mayhill's email to IHT employees: Personal Lines – Preferred Auto & Home Package The definition of a preferred package household, carriers: American Commerce (ACIC), Celina, Central Insurance, Donegal Insurance Group, Encompass, Fidelity, Grinnell Mutual, Hanover/Citizens Insurance, **The Hartford**, Kemper, Merchants, MetLife Auto & Home, Safeco and Travelers.

189.    Some of the victims sworn affidavits on anti-trust:

> October 2, 2018 Collaborating Sworn Affidavit of Norman L. Fountain, Excerpt: "I am a victim of financial and professional harm by IHT Insurance, Fritz Griffioen, Bill Griffioen, Rod Mayhill and their attorney. I also enjoin with Merrilee Stewart as an additional informant and whistleblower with all investigations and court action.
> I was in charge of a division called Speedy Auto Insurance that had been formed after the acquisition of York Insurance Agency.  Speedy Auto Insurance predominately assisted the first-time car buyers with obtaining the necessary insurance to protect their new purchase in the states of Indiana, Illinois and Ohio. Fritz Griffioen and Bill Griffioen referred to this business as **"low hanging**

**fruit"**. I recall being attacked by Bill Griffioen, quoting: "Why do you insist on having these kind of people in the organization? We don't like low hanging fruit and it needs to be eliminated." Rod Mayhill chimed in to support Bill Griffioen, along with Fritz. Fritz Griffioen, Bill Griffioen and Rod Mayhill also coined the phrase **"Affluent Middle Class"** as the only customers we should be helping and writing business on.

October 17, 2018 Collaborating Sworn Affidavit of Linda Resch, Excerpt: IHT called the customers that I assisted **low hanging fruit**. Preferred carrier requirements by IHT: **no homes under $150,000, no mono line homes and no auto liability limits less than 100/300.**

October 17, 2018 Collaborating Sworn Affidavit of Michael W. Denys, Excerpt: Michigan agency/supplier. Excerpt: Monday, October 15, 2018 I called IHT to ask about using Allstate/Encompass Insurance for Auto and Home customers in Michigan. This employee stated: "We are enforcing the **Affluent Middle-Class Rule** on all business written with Encompass". Retaliation: Grange carrier access removal was because of my placement of Home only, without the Autos, with Grange.

October 16, 2018 Collaborating Sworn Affidavit of Maria Rondine Adrion, Excerpt: The customers that I assisted were considered as **low hanging fruit** by IHT and I was directed to offer business only through non-standard carriers on a separate rating system. I was restricted in the placement of business with IHT Insurance preferred auto and home insurance carriers. These restrictions include: **no homes under $150,000, no mono line homes and no auto liability limits less than 100/300.**

November 30, 2018 Collaborating Sworn Affidavit of William Turnbull, Excerpt: "my agency has been notified by various communications by IHT to write insurance policies meeting certain criteria for most preferred carriers appointed with IHT. Examples of the criteria when issuing policies through most preferred carriers has appeared on IHT web pages, emails, and other forms of communication. The criteria, in part, consisted of writing auto insurance liability with a limit **no less than $100,000 per person and $300,000 per occurrence or greater and with a certain carrier home dwelling limit of $225,000 or greater and package business auto and home both.** These requirements by IHT if followed may discriminate against certain segments of our population."
"I, William Turnbull submit this affidavit as a whistleblower and victim of IHT, Fritz Griffioen, Bill Griffioen and Rod Mayhill."

October 27, 2018 Collaborating Sworn Affidavit of John Mathers
Excerpt: My agency, doing business with IHT was required to comply with restrictive rules in the placing of Auto and Home Insurance business with a preferred insurance carrier. By way of example, **the minimum liability limits were required 100/300.**

October 31, 2017 Collaborating Sworn Affidavit of Merrilee Stewart, Excerpt: "all RRL members also became fully informed on many other regulatory violations, including: Redlining, Role-On of Premium, FLSA violations and many

other illegal business practices called "At Risk" items brought to the attention of all members by our attorney Christopher B. Murphy."

"The housing discrimination (Insurance Redlining) was still on-going. In addition, the extent of the embezzlement scheme on a large producing agency, such the Fountain Entities, was revealed through commission financial records and they were extensive."

190.    The involvement of IHT/Firefly board (Fritz Griffioen, Bill Griffioen and Rodney Mayhill) in redlining and anti-trust violations was substantiated with hundreds of documents to the Ohio Department of Insurance on February 5, 2015 and Ohio Civil Rights Complaint in June 2015 and the Franklin County Common Pleas Court Case 15CV001842. A few of the documents are shown below:

Fritz Griffioen's email to IHT personnel about single line (monoline) homeowners written in Citizens/Hanover Insurance: "the home/no auto ones would seem to be **low-hanging fruit**"

Fritz Griffioen, email with underwriting guides for business with IHT in Michigan and other states with attachments: Auto Best Practices **Preferred, Ineligible list: BI/PD limits lower than 100/300, Households with no full coverage vehicles, Drivers with foreign drivers licenses, Drivers under age 23 named as primary insured.**

Bill Griffioen's email to IHT personnel about stand alone with low limits of Liability "Just got an email from [] saying he had placed the stand alone auto with another carrier" "we probably ought to give our producers a heads up on the profile of what OC is looking for. Otherwise this situation may repeat itself"

Rod Mayhill's email to IHT employee Chris about a producing agent[] about his prospective customer Excerpt: "my statement of two items…first, we get the **low hanging fruit** which is usually rotten and second, why go after the 20% of the marketplace we don't want or do well in instead of going after the 80% we do well. Get him back on the path otherwise we will have a mess."

Rod Mayhill forwarding email to IHT personnel: Excerpt: "The key is package business. This is the future **whether the agents like it or not.**

Rod Mayhill: "Package business or the carriers will shut off access"

Central Insurance email: Excerpt: "Here are the things that concern me about this submission: Very low limits, Liability only, Not packaged with a homeowners. We'd rather not do business than build a marginal book." Rod Mayhill's response email to Central Insurance: "I understand your concern and I agree. We have discussed this with the staff person and they now totally understand your market

Grange Mono-line Auto and Home report from Rod Mayhill: **"Grange does not want monoline home whatsoever"**

IHT Employee Paul Kelley Teamwork activity Re: Producer [] / Monoline HO4 / Safeco Excerpt: [] wanted to know why we couldn't right monoline HO4 with Grange. **I explained to him that none of our preferred carriers want monoline property but we do have Grinnell and ASI that do want monoline."**

IHT Employee: "I was able to speak with [] today and I explained to him that as of right now we only have 2 preferred carriers that will accept monoline property risks (Grinnell and ASI). With that being said please place Ms. Parker's monoline HO4 with one."

IHT Employee [] Teamwork activity Re: Producer [] in Illinois: "Sent email to []. [] I reviewed the policy for []. Thank you for taking care of that. However, Kemper only takes package business, a monoline homeowners policy is not acceptable with them. You will need to get the autos

IHT Employee [] activity report - [] (OH supplier/agent) the preferred carriers only want package

Preferred vs. Standard IHT New Business Procedure from IHT Employee [], email with the attachment: 1. Package Business, 2. higher limits of liability, a minimum of 100/300 split limit or 300 CSL but a target of 500/500 or 500 CSL, 3. Multi-Car, 4. 25 years of age or older with good credit, good driving record, and no losses in the last 3-5 years, 5. age of the dwelling

191. Documentation of claims were provided to Defendant Hartford and upon information and belief, Allison M. Day, Esq. was working on behalf of Defendant Hartford when she failed to acknowledge the Ohio Civil rights complaint on redlining and choose solely to wrongfully attack the claimant, Plaintiff Merrilee Stewart.

**v. Notification of other lawsuits to Defendant Hartford regarding 1) the Culpability of the corporate attorneys, Third Party Plaintiffs: Christopher Murphy, Esq. and 2 a.) Third Party Plaintiff: James R. Carnes, Esq. and 2 b.) the Counterclaim against IHT/Firefly and Fritz Griffioen, Bill Griffioen and Rodney Mayhill Individually.**

a. Mowery Youell & Galeano v Merrilee Stewart, 18CV001994, 03/07/2018 and the culpability of **Third-Party Defendant Christopher B. Murphy, Esq**

192. On or about June 5, 2018 Defendant Julie Dengler made a claim file note: "These documents have nothing to do with IHT Insurance Agency Court of Common Pleas Franklin Count Ohio CV 18 CV 001994."

193. An interesting notation since the court documents supplied to Defendant Julie Dengler were all about Non-Party IHT/Firefly in the countercomplaint. The third-party

complaint is against the culpable corporate attorney, Christopher B. Murphy, Esq. who identified the at-risk business practices, then aided and abetted the criminals on the cover up and concealment of these same at-risk items. Repeat, Christopher B. Murphy, Esq., identified the at-risk business practices, then aided and abetted the criminals on the cover up and concealment of these same at-risk items.

194. On or about July 24, 2018 Defendant Anne Trevethick corresponded with Plaintiff Merrilee Stewart about third-party claims made against putative insureds needing to be set up as separate claims and offered to speak with Ms. Stewart about other claims she would like to formally tender.

> As of 7/18, I have assumed handling of the claim made by RRL Holding Company of Ohio, LLC & IHT Insurance Agency Group, LLC, which was tendered under the Policy issued to TRG United Insurance, LLC (Claim No. Y53 LP 47660). There is no need to continue to copy Kathleen Ross on correspondence related to this claim.

> Further third party claims made AGAINST putative insureds under TRG United Insurance's Policy will need to be set up as separate claims. I would be happy to speak with you about any other claims that you would like to formally tender under TRG United Insurance's Policy.

> Additional questions or inquiries regarding third-party claims that have been or need to be tendered under the IHT Insurance Agency Group Policy should be addressed to Tyler Smith and/or Julie Dengler.

195. Plaintiff Merrilee Stewart called and left a message for Defendant Anne Trevethick requesting more information on setting up separate claims which she had referenced in the correspondence described in ¶198.

196. The voice message indicated Defendant Anne Trevethick was out of the country so there was not the opportunity for Plaintiff Merrilee Stewart to speak directly with her.

197. On or about September 4, 2018 Plaintiff Merrilee Stewart received correspondence from an attorney representing Defendant Hartford, Katheryn M. Lloyd, Esq. of Carpenter Lipps & Leland LLP

198. As a result, Plaintiff Merrilee Stewart, at that time was effectively shut off from any communications with Defendants Hartford, Julie Dengler, Anne Trevethick and Tyler Smith, Esq.

199. This included Plaintiff Merrilee Stewart as a customer and as a claimant as all communications were directed to this attorney representing Defendant Hartford, Katheryn M. Lloyd, Esq. of Carpenter Lipps & Leland LLP.

b. RRL/IHT/Firefly v Merrilee Stewart US District Court Southern District of Ohio Judge Algenon L. Marbley case 218CV1132, August 23, 2018, including **Third Party Defendant James R. Carnes, Esq.** and the **Counterclaim against IHT/RRL and individually Fritz Griffioen, Biull Griffioen and Rodney Mayhill.**

200. On or about August 23, 2018 the current IHT/Firefly attorney James R. Carnes, Esq. filed another court case against Plaintiff Merrilee Stewart. This case purports the Ohio Civil Rights complaint of June 2015, the Hartford Insurance claims and the police report were without merit.

201. The merits of Ms. Stewart's reports are now well documented and collaborated. More victims and informants continue to supply the Department of Justice and the Federal Bureau of Investigation with substantiating evidence.

202. Plaintiff Merrilee Stewart responded with a countercomplaint against IHT/Firefly and Fritz Griffioen, Bill Griffioen and Rodney Mayhill, and a Third-Party complaint against the culpable corporate attorney James R. Carnes, Esq. The case was then moved to US District Court Southern District of Ohio with Judge Algenon L. Marbley case 218CV1132 on September 28, 2018.

203. Additional counterclaim plaintiffs have joined the action against IHT/Firefly and Fritz Griffioen, Bill Griffioen and Rodney Mayhill.

204. The current counterclaim plaintiffs are Norman L. Fountain, Maria Rondine Adrion, Michael W. Denys, Linda Resch, John Mathers, Kevin Becker, Ted Lewicki, William

Turnbull, Dan Jones, Victoria Russo, John Bucher, Merrilee Stewart a/k/a/ Norman L. Fountain Ins. & Assoc., York Insurance Agency and Client-Choice Insurance agency. These counterclaim plaintiffs are now or have been supplier/agencies on behalf of IHT/Firefly doing business in the states of: Alabama, Illinois, Indiana, Ohio and Michigan.

205. Norman L. Fountain also joined as an additional Third-Party Plaintiff against Third Party Defendant James R. Carnes.

206. Upon information and belief, the attorney representing Defendant Hartford submitted these Third-Party Complaints reference above to her client.

**F. The new Show Cause motion coming from Defendant Hartford's attorney Katheryn M. Lloyd, Esq. of Carpenter Lipps & Leland LLP submission of claim report(s)**

207. As is documented in the previous paragraphs there are two additional lawsuits that were provided to Defendants Hartford, Julie Dengler, Anne Trevethick and their attorney, Katheryn M. Lloyd, Esq. of Carpenter Lipps & Leland LLP

208. The first additional case, involving attorney misconduct of the original RRL, IHT/Firefly attorney who identified the "At Risk" business practices, Christopher B. Murphy. See Franklin County Common Pleas, March 7, 2018, Case Number: 18CV001994.

209. A The second additional case, involving attorney misconduct of the purported current RRL, IHT/Firefly attorney who is also the conflicting personal attorney Fritz Griffioen, Bill Griffioen and The Griffioen Agency is currently at US District Court Southern District of Ohio Case Number: 218CV1132.

210. The attorney for RRL and IHT/Firefly, James R. Carnes, Esq., who is the subject of the Third-Party Complaint filed by Third Party Plaintiffs Norman L. Fountain and Merrilee Stewart has motioned for a show cause hearing relating specifically to Plaintiff Merrilee Stewart solely, alleging a violation of the 2015 agreed order.

211. Specifically alleging that Plaintiff Merrilee Stewart held herself out as representing RRL and or IHT/Firefly.

212. Alleging a victim and informant who responds with a counterclaim against Counterclaim Defendants IHT/Firefly, now joined by numerous other victims, is holding herself out as representing IHT/Firefly is not plausible.

213. Further, alleging the Non-party Third Party complaint against James R. Carnes, Esq., now joined by Norman L. Fountain is holding herself out as representing Non-Party IHT/Firefly is not plausible.

214. The Counterclaim Plaintiffs now total 12, including Ms. Stewart, and is against IHT/Firefly and the third-party plaintiffs include both Merrilee Stewart and Norman L Fountain.

215. The other lawsuit/complaint involves a Third-Party complaint against the culpable original corporate attorney Christopher B. Murphy.

216. RRL is a non-party in both of the claims asserted in this motion.

217. Plaintiff Merrilee Stewart, does remain a member of RRL and the agreed upon entry does not compel Ms. Stewart to lie to the tribunal or investigative authorities.

218. Plaintiff Merrilee Stewart does not claim to be associated with the criminal enterprise of IHT/Firefly, managed by a board consisting of: Fritz Griffioen, Bill Griffioen and Rodney Mayhill.

**G. The pending arbitration for the removal of Fritz Griffioen, Bill Griffioen and Rodney Mayhilll from RRL filed by Norman L. Fountain**

219. On or about December 29, 2018 the original founder of IHT/Firefly who is currently partially redeemed from RRL, Norman L. Fountain, filed with the American Arbitration Association for the removal of Fritz Griffioen, Bill Griffioen and Rodney Mayhill from RRL for cause in violation of section 7 of Buy/Sell agreement signed by all RRL members in September 2012.

220.    The Buy/Sell agreement contains an arbitration clause which all parties agreed to at the execution of the agreement.

221.    Plaintiff Merrilee Stewart is an additional claimant on the arbitration case.

222.    Based upon the now collaborated felonies committed by Fritz Griffioan, Bill Griffioen and Rodney Mayhill they will likely be removed for cause under section 7 of the Buy/Sell.

## H. The Duty to Notify

223.    Plaintiff Merrilee Stewart was fulfilling her duty to notify Defendant Hartford.

224.    The insured's obligations to the Defendant Hartford include duties in the event of an occurrence, as represented by their business liability form:

> 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit,  a. Notice Of Occurrence Or Offense
>
> You or any additional insured must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
> (1) How, when and where the "occurrence" or offense took place; (2) The names and addresses of any injured persons and witnesses; and   (3) The nature and location of any injury or damage arising out of the "occurrence"  or offense.
>
>  b. Notice Of Claim
> If a claim is made or "suit" is brought against any insured, you or any additional insured must: (1) Immediately record the specifics of the claim or "suit" and the date received; and (2) Notify us as soon as practicable.
>
> You or any additional insured must see to it that we receive a written notice of the claim or "suit" as soon as practicable.

225.    Notwithstanding, the response from Defendant Hartford claim representative Kathleen Ross received on May 24, 2018:

> "I do not currently need all these other pleadings.  I need the Complaint or any Amendment to the Complaint."

226.    Plaintiff Merrilee Stewart has not and could not transfer her duties or rights under the policy, as the policy language only allows this in the event of death:

"Transfer Of Your Rights And Duties Under This Policy
Your rights and duties under this policy may not be transferred without our
written consent except in the case of death of an individual named insured."

## I. **The culpability of Defendant Tyler Smith, Esq.**

227.    On or about May 30, 2018 Defendant Hartford's marketing representative Doug
Randolph obtained the name of a contact for Plaintiff Merrilee Stewart to correspond about her
claims experiences and the failure to respond to the claimant or insured Ms. Stewart.

228.    Plaintiff Merrilee Stewart spoke with Defendant Tyler Smith on May 30, 2018.

229.    Plaintiff Merrilee Stewart followed up with a correspondence on June 1, 2018
with details on the claims and issues needing to be addressed.

230.    Plaintiff Merrilee Stewart also supplied her Appellate Briefing which documented
the false information utilized by Defendant Hartford in their initial denial of coverage on the
April 28, 2015 claim Y53 LP 06979,

231.    There are rules that apply to lawyers including those who may not be active in the
practice of law.

232.    Contained in The Model Rules of Professional conduct Preamble a lawyer is "an
officer of the legal system and a public citizen having special responsibility for the quality of
justice (emphasis).

233.    Contained in section 8.4 Misconduct, Maintaining The Integrity Of The
Profession

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct,
knowingly assist or induce another to do so, or do so through the acts of
another;

(c) engage in conduct involving dishonesty, fraud, deceit or
misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice;

(g) engage in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, sex, religion, national origin, ethnicity, disability, age, sexual orientation, gender identity, marital status or socioeconomic status in conduct related to the practice of law. This paragraph does not limit the ability of a lawyer to accept, decline or withdraw from a representation in accordance with Rule 1.16. This paragraph does not preclude legitimate advice or advocacy consistent with these Rules.

234. Upon information and belief Defendant Tyler Smith, Esq. is a licensed attorney as well as a representative of Defendant Hartford.

235. On June 11, 2018 Defendant Tyler Smith responded to Plaintiff Merrilee Stewart's June 1, 2018 correspondence with:

> "Ms. Stewart,
> We have received your correspondence and will respond after we have had an opportunity to review your requests.
> Thank you,
> Tyler Smith"

236. After multiple requests and as of now, 7 months have passed. Defendant Tyler Smith still has yet to respond to Plaintiff's correspondence of June 1, 2018.

237. However, on or about September 4, 2018 Plaintiff Merrilee Stewart was required to communicate only with Defendant Hartford attorney Katheryn M. Lloyd, Esq. of Carpenter Lipps & Leland LLP and this attorney has yet to respond to the Tyler Smith correspondence.

**V. SUMMARY**

238. Plaintiff Merrilee Stewart's ownership shares in RRL remain unredeemed and RRL wholly owns IHT/Firefly, therefore creating a duty of Plaintiff Merrilee Stewart to notify, per the insurance contracts (emphasis).

239. Defendants Hartford, Julie Dengler, Anne Trevethik and Tyler Smith, Esq. subsequently have a duty to investigate.

240. Close examination of the claim file log(s) of Defendant Hartford and Defendant Julie Dengler reveal the lack of investigation and rather reliance on already proven false

information from the persons committing the federal crimes, the controlling board of managers at IHT/Firefly; Fritz Griffioen, Bill Griffioen and Rodney Mayhill and their attorney claiming to represent RRL: James Carnes, Esq.

241.    This includes the now proven false affidavit supplied by Fritz Griffioen to Defendant Hartford, the courts and upon belief the Columbus Police, which interfered with a proper investigation.

242.    Plaintiff Merrilee Stewart provided documentation of more than 10 court actions involving IHT/Firefly/RRL and TRG and Plaintiff Stewart and the ongoing felonies perpetrated by Fritz Griffioen, Bill Griffioen, The Griffioen Agency and Rodney Mayhill.

243.    Defendant Hartford, Julie Dengler, Anne Trevethik and Tyler Smith, Esq. failed in their duty to properly and adequately investigate the claims they choose to acknowledge and/or the claims they choose to ignore.

244.    Defendant Hartford failed in their duty to investigate all reasonably available sources (emphasis) of information, failed in their duty to timeliness and prompt investigation, failed in their duty to communicate with the insured during the claim process, failed in their duty to defend, and failed in their contractual duty of the covenant or promise of good faith and fair dealing.

245.    Defendant Hartford has an obligation to provide the insured with defense to claims made under a liability insurance policy. The courts have held that a duty to defend arises immediately and does not depend on whether indemnity is actually owed. As a general rule, an insured need only establish that there is potential for coverage under a policy to give rise to the insurer's duty to defend.

> A July 2008 decision on a piece of litigation in the California Supreme Court affirmed the duty to defend concept as being greater than the duty to indemnify. The case, Crawford v. Weather Shield Manufacturing, stated that a

subcontractor's contractual obligation to defend a builder exists regardless of the subcontractor's actual negligence.

246.    Plaintiff Merrilee Stewart's damages include emotional, economic, interest, cost of the lawsuits and attorney fees. Consequential, general and punitive.

247.    Defendant Hartford continues to be the source of the ongoing litigation in Franklin County Common Pleas court, which precedes the proposed cutoff date of May 14, 2015 on the offer of Defendant Hartford's payment of Plaintiff Merrilee Stewart's attorney fees.

248.    Plaintiff Merrilee Stewart has documented attorney fees of $266,987.68 which does not include almost two years' worth of Pro Se research and court case work.

249.    Research indicates that "Bad Faith" law in Ohio contains no tort reform cap restrictions and is therefore unlimited.

250.    On or about December 9, 2018 Plaintiff Merrilee Stewart corresponded with the attorney representing Defendant Hartford. RE: Bad Faith Claim, Correspondence to Tyler G. Smith of June 1, 2018, $230,406.68 Demand Correspondence of August 11, 2018 and Conversation of October 23, 2018.

> "If it is the desire for Hartford, solely as a business accommodation and without waiving rights, to reimburse Ms. Stewart reasonable fees in defense, then those fees need to be $266,987.68 (less Arbitration cost of $36,581.00 which relate solely to a possible triggering event) or $230,406.68."

251.    In the well establish and predictable pattern of lack of responses to their customer and supplier/agent, the attorney for Defendant Hartford Katheryn M. Lloyd, Esq. of Carpenter Lipps & Leland LLP, purported a responsive correspondence on or about January 4, 2019. However, the correspondence did not response to the Ms. Stewarts letter. The correspondence merely included the responsive documentation from the four claims established by Defendant Hartford from the two most recent lawsuits. Katheryn M. Lloyd, Esq. correspondence:

> "In accordance with my prior communications in which I have offered to serve as a central point of contact for you on your communications with Sentinel Insurance

Company, Ltd. ("Sentinel"), I am forwarding to you the four enclosed letters, dated January 4, 2019, from Sentinel claims personnel,"

252.    A curious response due to the fact that Plaintiff Merrilee Stewarts correspondence of December 9, 2018 was centered around ending our customer relationship.

253.    As stated in the preceding paragraphs the lawsuits which included third party claims against the culpable corporate attorneys James R. Carnes and Christopher B. Murphy had been submitted to Defendant Hartford shortly after they were received.

254.    Claim Acknowledgements under both insurance policies was initiated by Defendant Hartford's attorney Katheryn M. Lloyd, Esq. of Carpenter Lipps & Leland LLP on January 4, 2019

255.    In partial summary: 1) Tyler Smith has never responded; 2) claim Y53 LP 47660 had no responsive determination for 1 year and 5 months (emphasis); 3) Hartford solely utilized the original pleadings for defense and coverage determination, and now the allegations contained in the pleadings are provably false; 4) current action is required; 5) the incorrect occurrence date was used by Hartford in claim Y53 LP 47660 in the attempted denial; 6) Delay alone can be "Bad Faith"; 7) attempts to disconnection claims hinders the proper duty of investigation; 8) Ms. Stewart's RRL ownership shares remain unredeemed; 9) Ms. Stewart's Duties and Rights have not been waived, nor the obligations of Hartford to their insured; 10) and Hartford's duty to defend is greater than the duty to indemnify.

## VI. CAUSE OF ACTION

### COUNT 1: BAD FAITH

256.    Plaintiff Merrilee Stewart incorporates all previous allegations as if fully restated herein.

257.    Defendants delayed for 1 year and 5 months (18 months) before rendering a claims coverage decision in Plaintiffs claim detailed more fully in the preceding paragraphs. Delay alone is evidence of Bad Faith.

> "Finally, the jury could reasonably have found bad faith from the fact Midwestern waited nearly a full year after its physical investigation had been completed before refusing the claim." Wagner, supra, at 294.

258.    Defendants failed in their duty to thoroughly and timely investigate the claims that were submitted by the Plaintiff.

> An insurer's failure thoroughly and timely to investigate claims before rendering a coverage decision is evidence of bad faith, whether in the context of the duty to defend or the duty to indemnify. See, e.g., Waller (insurer is obligated to promptly and adequately investigate and process claims before rendering a decision on the duty to defend or indemnify) and Egan
> ("an insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial").

259.    Defendants failed to consider all evidence of the cases claimed and actually relied on false information that has been proven to be false in rendering a determination. Further, Claimants launched attacks at their policyholder with false accusations of fault on the part of the Plaintiff.

> One of the most crucial lessons to learn from this aspect of the case is all evidence must be considered and all reasonable leads should be pursued. A thorough investigation should not be an attempt to prove the insured was at fault, but instead to exonerate the insured. These are crucial aspects of any investigation which, at least according to the evidence presented at trial, Homestead failed to follow in the Zoppo case.

> The lesson to learn from the Zoppo case is the standard to be utilized in claims investigations and to conduct a complete and thorough investigation of the claim, considering all of the evidence in the totality of the investigation. Put simply, the goal of any insurance investigation should be to reach the correct decision regarding the claim whether that decision means the claim is paid or denied.

> See also, *Netzley v. Nationwide Mutual Insurance Co.* (1971), 34 Ohio App.2d 65, 296 N.E.2d 56 in which the court said that one fact indicative of the insurer's bad faith was when "the insurer fails to properly investigate the claim so as to be able to intelligently assess all of the probabilities of the case."

260. Defendants failed to give the interest of insured, Plaintiff Merrilee Stewart, consideration and in the claim where the Plaintiff was a claimant the Defendants gave Plaintiff no consideration or contact at all.

> One important facet of an insurer's obligation to give the insured's interest as much consideration as it does its own is the duty to reasonably inform an insured of the insured's rights and obligations under the insurance policy. An insurance company is acting in bad faith if it forces an insured to file a lawsuit in order to enforce its rights under the insurance policies.

261. Defendants breached their legal duty to Plaintiff Merrilee Stewart.

> In a bad faith action, the insurer's liability is not dependent on a breach of the insurance contract. Gerken v. State Auto Ins. Co., No. 13CA14, 2014-Ohio-4428, ¶ 46 (4th Dist. Sept. 8, 2014) (citing Captain v. United Ohio Ins. Co., No. 09CA14, 2010-Ohio-2691, ¶ 22 (4th Dist. 2010)). "'Rather, the liability arises from the breach of the positive legal duty imposed by law due to the relationships of the parties.'" Gerken, 2014-Ohio-4428, ¶ 46 (citing Hoskins, 6 Ohio St. 3d at 276; Captain, 2010-Ohio-2691, ¶ 46).

262. Defendants failed in their duty to defend. Defendant (the insurer) is required to look not only at the allegation of the complaint but must also consider extrinsic facts of which it is aware.

263. Defendant Hartford failed to consider the true facts when it determines its duty to defend their customer, Plaintiff Merrilee Stewart.

264. The true and unpled facts known by Defendant Hartford falls within the scope of coverage under the policy and thus the Defendants failed in their duty to defend their customer A

> Lee v. Aetna Cas. & Sur. Co.], or if the allegations of the complaint are ambiguous or inadequate to evaluate the insurer's duty to defend, several jurisdictions allow introduction of extrinsic evidence to determine if the duty to defend can be terminated before conclusion of the underlying action. A recent pair of cases in Illinois demonstrates that allegations in third-party pleadings may be taken into consideration in determining the duty to defend. See American Econ. Ins. Co. v.
> Insuring Agreement DePaul Univ., 890 N.E.2d 582 (Ill. App. 2008); and American Econ. Ins. Co. v. Holabird & Root, 886 N.E.2d 1166 (Ill. App. 2008).

265. As a result of the Defendants Bad Faith Plaintiff Merrilee Stewart has suffered calculable damages.

### COUNT 2: BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

266. Plaintiff Merrilee Stewart incorporates all previous allegations as if fully restated herein.

267. Defendants failed to render a claims coverage decision to Plaintiff on two claims and on the remaining claim Defendants delayed for over a year.

268. As a result the Defendants have breached their duty of good faith and fair dealing owed to their policyholder Plaintiff Merrilee Stewaert..

> Pursuant to this implied duty of good faith and fair dealing, an insurer is obligated to do many things, including to "process all claims submitted to it promptly and competently, even in those instances where no coverage will ultimately be provided." Travelers Ins. Co. v. Lesher, 187 Cal. App. 3d 169 (1986).

269. Defendants have breached their duty owned to their policyholder and supplier/agent, Plaintiff Merrilee Stewart.

270. The duty exists in regard to every claim the policyholder presents, regardless of whether the claim ultimately is determined to be covered. An insurer is not obligated to honor every claim presented to it, but it is obligated to timely, adequately, and properly investigate every claim and to make and communicate a timely determination on each, regardless of whether the determination ultimately is one of acceptance or denial.

> Moreover, "the obligations of insurers go beyond meeting reasonable expectations of coverage [and] … encompass qualities of decency and humanity inherent in the responsibilities of a fiduciary." Egan v. Mutual of Omaha Ins. Co., 24 Cal. 3d 809, 157 Cal. Rptr. 482, 598 P.2d 452 (1979).

271. As a result of the Defendants Breach of Duty of Good Faith and Fair Dealing Plaintiff Merrilee Stewart has suffered damages

### COUNT 3: INTERFERENCE WITH A CONTRACT

272.    Plaintiff Merrilee Stewart incorporates all previous allegations as if fully restated herein.

273.    Defendants were well informed about Plaintiff Merrilee Stewarts minority ownership in the close corporation RRL and RRL wholly owning IHT/Firefly.

274.    Defendants also were well aware that Plaintiff's ownership rights were not terminable at-will.

275.    Defendants through their improper actions and the improper actions of their marketing representative interfered with Plaintiff Merrilee Stewart's ownership (property rights) and business relationship.

276.    Defendant interference period began with the handling of the reported claim on n or about April 28, 2015 a claim, Y53 LP 06979, and the Defendants interference continues today.

277.    Defendant Hartford and their marketing representative had knowledge of sufficient facts to determine that Plaintiff had a contract or a business relationship with RRL / IHT (emphasis).

278.    Defendant Hartford and their marketing representative had "knowledge of facts" which, if followed by inquiry ordinarily made by a reasonable and prudent person, would have led to a disclosure of the contractual and business relationship with RRL/IHT.

279.    At a minimum in these circumstances, a defendant knows enough facts to alert the defendant that it must ask the simple question to the third party, "Do you have any contract or a business relationship that may be breached or terminated as a result of our proposed relationship?"

280.    Plaintiffs non-at-will contract, has a "greater definiteness of the other's expectancy" and a stronger claim to security.

Miller v. Pennitech Indus. Tools, Inc., No. 2356-M, 1995 Ohio App. LEXIS 1622, at *14 (Ohio Ct. App. Medina County Apr. 19, 1995) (explaining that if the employment agreement was not terminable at will the plaintiff would have had a "legal right" to enforce it against the third party).

281.    As a result of the Defendants Interference with a contract and business relationship, Plaintiff Merrilee Stewart has suffered damages.

## COUNT 4: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

282.    Plaintiff Merrilee Stewart incorporates all previous allegations as if fully restated herein.

283.    Defendants have intentionally inflicted emotional distress upon their customer, supplier/agent and Plaintiff Merrilee Stewart.

284.    From the Defendants involvement in the appointment of TRG to the failure in responding to the insurance redlining contained in the original claim.

285.    The Defendants choose the path to discredit their customer and supplier/agent even with the inside knowledge their narratives were false.

286.    The Defendant participation in knowingly purporting false and disparaging information on their customer and supplier/agent is an added source of distress for Plaintiff Merrilee Stewart.

287.    Defendants have forced the Plaintiff to representation Pro Se due to the extreme financial burdens place upon the Plaintiff as the result of the Defendants failure to act.

in Ohio had agreed that bad faith damages included mental distress. In Eastham v. Nationwide Mutual Ins. Co. (1990), 66 Ohio App.3d 843, 586 N.E. 2d 1131, the court of appeals affirmed a jury verdict which awarded $425,000 in compensatory damages for bad faith based on the insured's humiliation, embarrassment, nervousness, and loss of self-worth while being harassed by collectors about bills that they were unable to pay."

288.    As a result of the Defendants Intentional Infliction of Emotional Distress Plaintiff Merrilee Stewart has suffered damages.

## COUNT 5: CONVERSION

289.    Plaintiff Merrilee Stewart incorporates all previous allegations as if fully restated herein.

290.    As described more fully in the preceding paragraphs the Defendants exercised control over the property rights of Plaintiff Merrilee Stewart inconsistent with the plaintiff's minority ownership rights.

291.    The Defendant's actions and omissions to act interfered with the Plaintiff's minority ownership (property) rights in RRL.

> "'Conversion is a wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding it from his possession under a claim inconsistent with his rights.'" Id. at ¶76 (quoting Zacchini v. Scripps-Howard Broadcasting Co., 47 Ohio St.2d 224, 226, 351 N.E.2d 454 (1976)).
>
> See Estate of *Barney v. Manning*, 8th Dist. No. 94947, 2011-Ohio-480. ("Conversion is an intentional tort."). Because intentional torts are subject to joint and several liablility under the Apportionment Statute, the trial court did not err in applying joint and several liability to the appellants.

292.    As a result of the Defendants Conversion Plaintiff Merrilee Stewart has suffered quantifiable damages.

## COUNT 6: FRAUD AND MISREPRESENTION

293.    Plaintiff Merrilee Stewart incorporates all previous allegations as if fully restated herein.

294.    Defendant Hartford's misrepresentations included affirmative statements that are false.

295.    Defendant Hartford, in a further act of misrepresentation, remained silent and did not disclosure all of facts.

296.    Defendant Hartford is under a legal obligation to disclose all material facts, and yet they choose to be silent.

297.    As a result of the Defendant's Fraud and Misrepresentation, Plaintiff Merrilee Stewart has suffered damages.

### COUNT 7: CIVIL CONSPIRACY

298.    Plaintiff Merrilee Stewart incorporates all previous allegations as if fully restated herein.

299.    As is described more fully in the preceding paragraphs, Defendants conspired with the culpable corporate attorneys of RRL/IHT/Firefly to plan a particular result in the claims which were averse to Plaintiff Merrilee Stewart.

300.    Defendant's participation in the conspiracy was intentionally designed to withhold claim information or even the fact that a claim existed from the Plaintiff, so that the planned determination results would not be based upon the true facts.

301.    The Defendant's committed overt acts in furtherance of the conspiracy, causing an injury or damages to the Plaintiff Merrilee Stewart.

302.    The Defendant's conspired objective is unlawful, malicious and cruel.
The Defendants are jointly and severally liable for each act and for all foreseeable injuries to the Plaintiff Merrilee Stewart, including punitive damages.

303.    As a result of the Defendants Civil Conspiracy, Plaintiff Merrilee Stewart has suffered damages.

### COUNT 8: MISPRISON OF AN ANTI-TRUST FELONY

304.    Plaintiff Merrilee Stewart incorporates all previous allegations as if fully restated herein.

305.    Defendant Hartford knowing did not disclose, and concealed, evidence of violations of sections 1, 2 and 3 of the Sherman Act.

306.    Violations of sections 1, 2, and 3 of the Sherman Act 2 are felonies.

307. Misprision is a separate offense from the underlying felony.

308. The nondisclosure of Defendant Hartford facilitated a continuation of the violations, making a misprision indictment certain.

309. Upon belief Defendant Hartford and/or their representative attorneys have impeded and influenced the due and proper administration of law in their actions and inactions in the lawsuit/claims involving RRL/IHT/Firefly and Plaintiff Merrilee Stewart.

> 18 U.S.C. § 1505 (1976). Section 1505 subjects to criminal liability anyone who "corruptly ... influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which [a) proceeding is being had before [a] department or agency of the United States
>
> The statute also applies to obstruction of compliance with a civil investigative demand. The term agency "proceeding" in the statute has been broadly construed. United States v. Vixie, 532 F.2d 1277, 1278 (9th Cir. 1976); United States v. Fruchtman, 421 F.2d 1019, 1021 (6th Cir.), cert. denied, 400 U.S. 849 (1970).

310. As a result of the Defendant's Misprision of an Anti-Trust Felony Plaintiff Merrilee Stewart has suffered damages.

### JURY DEMAND

Merrilee Stewart, Pro Se Plaintiff, hereby requests a trial by jury on this claim.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Merrilee Stewart demands judgment in her favor and against Defendants, jointly and severally, as follows:

A. Compensatory damages, to be determined at trial, in an amount in excess of $1,500,000;

B. Punitive damages, where applicable;

C. Pain and suffering damaged, where applicable;

D. Reimbursement of funds paid or lost;

E. Attorney fees, where applicable;

F.      Pre-judgment and post-judgment interest;

G.     Declaratory, equitable, and injunctive relief;

H.     Jointly and Severally liable where applicable;

I.      Costs of this action; and

J.      Any such other and further relief, whether at law or in equity, that this Court determines to be proper.

## REPRESENTATIONS TO THE COURT

Plaintiff, Merrilee Stewart, Pro Se, hereby certifies that to the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances that this action is in accordance with the Federal Rules of Civil Procedure Rule 11 as follows:

> "(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information."

This complaint is followed by the certificate of service to all parties in the matter.

Respectfully Submitted,

/s/ Merrilee Stewart

Merrilee Stewart, *Pro Se*
182 Corbins Mill Drive
Dublin, Ohio 43017
Phone:  (614) 395-9071
Fax: (740) 965-4437
E-mail:  merrilee@trgunited.com

*Pro Se on behalf of Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of January 2019, this document was served via e-mail to lloyd@carpenterlipps.com, tyler.smith2@thehartford.com, Julie.Dengler@thehartford.com and anne.trevethick@thehartford.com.

On the 31st day of January 2019 pursuant to the US District Court Southern District of Ohio Eastern Division the service of this complaint, was sent by ordinary mail with tracking to all parties and included: 1) The complaint, 2) two copies of form AO 399 Waiver of the Service of Summons along with a stamped, self-addressed envelope for returning one copy, and 3) form AO 398 Notice of a Lawsuit and Request to Waive Service of a Summons.

The Hartford Financial Services Group, Inc.
Sentinel Insurance Company, Limited
c/o Katheryn M. Lloyd, Esq.
280 Plaza, Ste 1300, 280 North High
Columbus, OH 43215
(614) 365-4151
lloyd@carpenterlipps.com

Tyler G. Smith, Esq.
One Hartford Plaza
Hartford, Connecticut 06155
(860) 547-7271 tyler.smith2@thehartford.com

Anne E. Trevethick
One Hartford Plaza, T- 14-CO
Hartford, Connecticut 06155
(860) 547-5234
anne.trevethick@thehartford.com

Julie Dengler
101 Yorkshire Blvd, Suite B
Lexington, Kentucky 40509
(877) 625-2652 Ext 2303449
Julie.Dengler@thehartford.com

Respectfully,

/s/ Merrilee Stewart

Merrilee Stewart, Pro Se
182 Corbins Mill Drive
Dublin, Ohio 43017
(614) 395-9071
Merrilee@TRGUnited.com

*Pro See for Plaintiff Merrilee Stewart*