# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

MERRILEE STEWART,

          Plaintiff,     :     Case No. 2:19-cv-304

  - vs -                                Judge Sarah D. Morrison
                                         Magistrate Judge Chelsey M. Vascura

THE HARTFORD FINANCIAL SERVICES
GROUP, INC., *et al.*,

                                   :

          Defendants.

## **OPINION AND ORDER**

This matter is before the Court on the Motion of Defendants Tyler G. Smith, Anne E. Trevethick, and Julie Dengler (collectively "Individual Defendants") to Dismiss the Complaint. (ECF No. 2). Plaintiff Merrilee Stewart filed a Memorandum in Opposition (ECF No. 5), and the Individual Defendants filed a Reply Brief (ECF No. 9). The matter is now ripe for a decision.

**I.    The Allegations Contained in the Complaint**

Plaintiff Merrilee Stewart filed this action on January 31, 2019, naming as Defendants "the Hartford Financial Services Group, Inc. Sentinel Insurance Company, Ltd."[1] and the Individual Defendants. Ms. Stewart alleges that the Individual Defendants all work for or on behalf of Hartford: Defendant Smith is a "Manager Western General Liability and Auto Litigation," Defendant Trevethick is the "Senior Home Office Consultant Major Case Unit –

---

[1] The Sentinel Insurance Company, Ltd. has also filed a Motion to Dismiss, arguing *inter alia* that it has been "wrongly named as 'Hartford Financial Services Group, Inc.'" (ECF No. 3). The Hartford Financial Services Group, Inc. has separately filed its own Motion to Dismiss. (ECF No. 12). For purposes of addressing the Motion to Dismiss of the Individual Defendants, the Court will refer to the corporate defendant in the same manner as Ms. Stewart does in her Complaint—"Hartford."

1

Liability," and Defendant Dengler is a "Claim Consultant at the Western General Liability Service Center" (Compl., ¶¶ 6–8).

The *pro se* Complaint sets forth eight causes of action: Bad Faith (Claim 1), Breach of the Duty of Good Faith and Fair Dealing (Claim 2), Tortious Interference with Contract and a Business Relationship (Claim 3), Intentional Infliction of Emotional Distress (Claim 4), Conversion (Claim 5), Fraud and Misrepresentation (Claim 6), Civil Conspiracy (Claim 7), and Misprision of an Anti-Trust Felony (Claim 8). The bases for these claims is Ms. Stewart's allegation that Hartford and the Individual Defendants have erred in the handling of the insurance claims that she filed with Hartford stemming from extensive litigation between Ms. Stewart and several others.

For purposes of the pending Motion, the Court must accept the allegations in the Complaint as true, drawing all reasonable inferences in favor of Plaintiff. Those allegations are as follows:

Ms. Stewart is a minority owner of unredeemed shares in RRL Holding Company, LLC. (*Id.* ¶¶ 14, 21). RRL wholly owns Firefly Agency fka IHT Insurance Agency ("IHT/Firefly")[2]. (*Id.* ¶ 22). Ms. Stewart claims that she is a "whistleblower and victim" because she learned that RRL and IHT/Firefly were engaging in crimes and illegal activities and she reported what she learned to authorities. (*Id.* ¶¶ 16–18, 20). In retaliation for her efforts to bring to light the illegal conduct by RRL and IHT/Firefly, the company(ies) and/or its agents initiated civil actions against her. (*Id.* ¶¶ 18–19).

Ms. Stewart has been a minority owner of RRL since 2007, and she served on the board

---

[2] In her Complaint, Ms. Stewart refers to these entities interchangeably, sometimes as "IHT/Firefly/RRL" and sometimes "IHT/Firefly."

2

of the company between 2007 and 2014 (for one year she was the President of IHT/Firefly). (*Id.* ¶¶ 21, 25, 26). IHT/Firefly served as an insurance aggregator, selling carrier access to supplier/agents in 24 states; in fact, the other RRL owners also have separate independent insurance agencies that compete with IHT/Firefly. (*Id.* ¶¶ 31–33).

Ms. Stewart is a "contracted supplier" with Hartford as a result of her business relationship with IHT/Firefly, meaning that she offers Hartford's products and services to the general public in multiple states. (*Id.* ¶¶ 34–35). Ms. Stewart is also a contracted supplier of Hartford's products and services through TRG United Insurance, LLC ("TRG"); since 2014, Ms. Stewart has had an ownership interest in TRG in addition to RRL. (*Id.* ¶¶ 37, 42).

In addition to selling Hartford products to third parties, IHT/Firefly and TRG are insureds of Hartford. (*Id.* ¶¶ 39–43). Ms. Stewart claims that she is an insured under the business policies of both companies because of her roles at the companies. (*Id.*).

### *Ms. Stewart's Litigation with Non-parties*

Several disputes have arisen between Ms. Stewart and IHT/Firefly, RRL and/or their agents. It appears that the first of these disputes led to the filing of a lawsuit on March 2, 2015, in the Franklin County Court of Common Pleas, *RRL Holding Co. Ohio LLC, et al. v. Merrilee Stewart, et al.*, Case No. 15CV1842. (*Id.* ¶¶ 44–53). That lawsuit alleged, among other things, that Ms. Stewart improperly took certain monies from IHT's bank accounts and that she formed TRG to compete with RRL. (*Id.* ¶ 53). A second lawsuit was filed in the same court in 2018, *Mowery Youell & Galeano Ltd. v. Merilee Stewart, et al.*, Case No. 18CV1994, where Ms. Stewart was also named as a defendant. (*Id.* ¶¶ 69, 192).

In addition, two lawsuits were filed in this Court. The first of these cases was filed in 2016, *Merrilee Stewart, et al. v. IHT Insurance Agency Group LLC Welfare Benefits Plan, et al.*,

Case No. 2:16-cv-210. (*Id.* ¶ 163). That case remains pending. The second case was initially removed from the Franklin County Court of Common Pleas, *RRL Holding Company OH v. Merrilee Stewart*, Case No. 18CV7212, but was later remanded back to the Common Pleas Court, Case No. 2:18-cv-1132. (*Id.* ¶ 202).

On June 10, 2015, a charge was filed with the "Ohio Civil Rights" against IHT/Firefly. (*Id.* ¶¶ 54, 159).

It appears that there were also at least two arbitrations involving Ms. Stewart and RRL. But the procedural posture and overlay with the other legal actions is not clear from the Complaint. In the Complaint, Ms. Stewart cites excerpts of an "Arbitration Award" dated December 18, 2017, though she has not provided a copy of any arbitration papers to the Court. (*See id.* ¶ 56). The Complaint also refers to an arbitration filed on December 29, 2018 (after the cited Arbitration Award) against Ms. Stewart by the founder of RRL. (*Id.* ¶ 219).

### *Ms. Stewart's Insurance Claims with Hartford*

On or about April 28, 2015, under the IHT/Firefly policy, Ms. Stewart filed a claim with Hartford asking that Hartford defend her in the 2015 Franklin County litigation, claim number Y53 LP 06979 (hereinafter "IHT Claim"). (*Id.* ¶¶ 51–52). Her claim was denied by Hartford on or about July 8, 2015. (*Id.* ¶ 59). It was Defendant Dengler that sent Ms. Stewart the letter denying coverage. (*Id.* ¶ 60). She and Ms. Stewart had follow up correspondence regarding the claim where Ms. Stewart attempted to provide additional information in an effort to get Hartford to reverse its decision to deny her claim for coverage. (*Id.* ¶¶ 60–70, Exhibit A). As part of the IHT Claim, Ms. Stewart corresponded with Defendant Dengler inquiring about coverage for employee benefit liability. (*Id.* ¶¶ 71–75). Ultimately, on or about July 24, 2018, Defendant Dengler notified Ms. Stewart that Hartford's denial of coverage on the IHT Claim would not be

changed. (*Id.* ¶ 76).

Ms. Stewart filed a second claim with Hartford on or about February 17, 2017, this time under the TRG policy, claim number GL17249688, Y53 LP 47660 (hereinafter "TRG Claim"). (*Id.* ¶¶ 77–78). Thereafter, she spoke and corresponded with Defendant Smith on the TRG Claim. (*Id.* ¶¶ 79–81). However, as of January 31, 2019, she had not received a response from Defendant Smith. (*Id.* ¶¶ 81–83).

Even though Defendant Smith did not respond, on July 18, 2018, Defendant Trevethick notified Ms. Stewart that the TRG Claim was denied. (*Id.* ¶ 84, Exhibit C). Like with the IHT Claim, Ms. Stewart had follow up correspondence with Hartford in an effort to reverse its decision, though this time the correspondence was with Defendants Smith and/or Trevethick. (*Id.* ¶¶ 95–96, 194–97).

Much of the content of the Complaint is Ms. Stewart's allegations disputing the factual bases for Hartford's denials and setting forth how Hartford erred in its handling of the IHT and TRG Claims. (*See, e.g., id.* ¶¶ 87–94 and 97–140).

On or about July 18, 2016, Ms. Stewart filed an "Employee Dishonesty" claim with Hartford related to embezzlement by an IHT/Firefly employee, claim number CP16918233. (*Id.* ¶ 141). According to the Complaint, the Employee Dishonesty claim was improperly closed by Defendant Dengler. (*Id.* ¶¶ 141–55).

On an unknown date, IHT apparently made an Employment Practices Liability Insurance ("EPLI") claim for Ms. Stewart, claim number Y53 L 11253. (*Id.* ¶156). The disposition of this claim is unknown to Ms. Stewart, yet she believes that this claim may have triggered other actions of the IHT/Firefly and RRL parties. (*Id.* ¶¶ 156–222).

Ms. Stewart subsequently notified Hartford of two additional lawsuits in which she was

involved, namely Franklin County Court of Common Pleas Case No. 18CV1994 and United States District Court for the Southern District of Ohio Case No. 2:18-cv-1132. (*Id.* ¶¶ 207–09).

## II. Standard of Review and Analysis

### A. Motion to Dismiss for Insufficient Service of Process

A plaintiff is responsible for serving the summons and complaint within the applicable time period. Fed. R. Civ. P. 4(c)(1). Without such service, a district court is without jurisdiction to render judgment against a defendant. *See Friedman v. Estate of Presser,* 929 F.2d 1151, 1156 (6th Cir. 1991). The time limit for service of process is 90 days after the filing of the complaint. Fed. R. Civ. P. 4(m). "Absent a showing of good cause to justify a failure to effect timely service, the Federal Rules of Civil Procedure compel dismissal." *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996).

In this case, the docket reflects that the three Individual Defendants were served on March 26, 2019 (ECF Nos. 11, 13), after the instant Motion to Dismiss was filed. Defendants have not moved to strike the notices of service nor have they otherwise indicated that they believe the March 26 service of process is invalid. Accordingly, the Motion to Dismiss for insufficient service of process is **DENIED**. (ECF No. 2).

### B. Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

When evaluating a Rule 12(b)(6) motion to dismiss, courts must construe the complaint in

the light most favorable to the plaintiff and accept the complaint's allegations as true, drawing all reasonable inferences in favor of the plaintiff. *Coley v. Lucas Cty., Ohio*, 799 F.3d 530, 537 (6th Cir. 2015); *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Twombly,* 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, (2009) (citing *Twombly,* 550 U.S. at 555).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* (internal citations and quotations omitted). "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Bass v. Leatherwood*, No. 14-6321, 2016 WL 10998431, at *1 (6th Cir. Apr. 4, 2016) (quoting *Iqbal,* 556 U.S. at 677).

Plaintiff argues in her Memorandum in Opposition that the standards laid out in *Twombley* and *Iqbal* do not apply to her complaint because she is *pro se*. However, the law is quite clear that, although a *pro se* litigant is entitled to a liberal construction of her pleadings and filings, even a *pro se* plaintiff must do more than assert bare legal conclusions, and the "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Every plaintiff, regardless of whether or not they have counsel, "must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted

7

constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (emphasis in original). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

### 1. Bad Faith and Breach of the Duty of Good Faith and Fair Dealing

Ms. Stewart alleges in Claim 1 that Defendants acted in bad faith by, among other things, failing to properly investigate her claims, the significant delay in responding to the TRG Claim, and denying her claims. (Compl., ¶¶ 110, 111, 257–65). In Claim 2, she alleges that Defendants breached their duty of good faith and fair dealing. (*Id.* ¶¶ 266–71). Although Plaintiff sets forth these allegations as two separate claims, they are two sides of the same coin because both are premised upon the duty of insurers to exercise good faith (i.e., not to act in bad faith).

Under Ohio law, an insurer owes a duty to exercise good faith in defending and settling third-party claims brought against the insured. *Hoskins v. Aetna Life Ins. Co.,* 6 Ohio St. 3d 272, 276, 452 N.E.2d 1315, 1319 (Ohio 1983). A breach of that duty will give rise to a cause of action by the insured. *Id.* The insurer's duty is based on the relationship between the insurer and its insured and requires more than an insurer's evaluation of claims in good faith; an insured may pursue a bad-faith cause of action against the insurer even when the insurance claim is ultimately paid. *Id; Drouard v. Unit. Servs. Auto. Ass'n*, 2007-Ohio-1049, 2007 WL 707532, at *2 (Ohio Ct. App. 6th Dist. 2007). As the Ohio Supreme Court noted in *Hoskins v. Aetna Life Ins. Co.*:

> The liability of the insurer in such cases does not arise from its mere omission to perform a contract obligation, for it is well established in Ohio that it is no tort to breach a contract, regardless of motive. Rather, the liability arises from the breach of the positive legal duty imposed by law due to the relationship of the parties. This legal duty is the duty imposed upon the insurer to act in good faith and its bad faith refusal to settle a claim is a breach of that duty and imposes liability sounding in tort.

452 N.E.2d at 1320 (citations omitted).

With that said, an individual insurance adjuster does not have a contractual relationship with a policyholder and, consequently, does not have a corresponding personal duty to act in good faith in Ohio. *Howard Indus., Inc. v. Ace*, No. 2:13-cv-0677, 2014 WL 978445, at *5 (S.D. Ohio Mar. 12, 2014) ("The individual adjustor is not a party to the insurance contract and therefore cannot be individually liable for a breach of that contract. . . . The individual adjustor owes no duties, in his or her individual capacity, to the insured."); *see also Baker v. Nationwide Mut. Ins. Co.*, 2013-Ohio-1856, 2013 WL 1905334, at *4 (Ohio Ct. App. 9th Dist. 2013). The cases that Ms. Stewart cites from the State of Washington are irrelevant here.

Mrs. Stewart argues that none of the Individual Defendants are "adjusters" so the limitations in Ohio law are not applicable to her bad faith claim against them. However, this argument fails because it ignores the reason behind the rule—regardless of their titles at Hartford, the Individual Defendants do not have a contractual relationship with the policyholder (here, Ms. Stewart) and, consequently, they do not have a corresponding personal duty in their individual capacities to act in good faith.

The Motion to Dismiss is **GRANTED** as to Claims 1 and 2.

### 2. Tortious Interference with Contractual and Business Relationship

In Claim 3, Ms. Stewart alleges that Defendants interfered with her ownership of RRL and business relationship with RRL and IHT/Firefly. (Compl., ¶¶ 272–81). Because Ms. Stewart alleges that "Defendants" interfered with an existing contract, not with a prospective contractual relation, Plaintiff has not stated a claim for interference with a business relationship. *See Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.* (2002), 148 Ohio App. 3d 596, 604, 774 N.E.2d 775, 780 (Ohio Ct. App. 3d Dist. 2002) ("The main distinction between tortious interference with a contractual relationship and tortious interference with a business relationship

9

is that interference with a business relationship includes intentional interference with prospective contractual relations, not yet reduced to a contract."). Accordingly, the Court's analysis will focus on Plaintiff's claim for tortious interference with a contractual relationship.

In order to recover for a claim of intentional interference with a contract under Ohio law, Ms. Stewart "must prove (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." *Kenty v. Transamerica Premium Ins. Co.,* 72 Ohio St. 3d 415, 419, 650 N.E.2d 863, 866 (Ohio 1995). "Intentional procurement" refers to conduct that causes a third party to breach its contract, or that leaves a third party with no choice but to breach its contract. *Union of Needletrades, Industrial and Textile Employees AFL-CIO v. American Capital Strategies, Ltd.*, 546 F. Supp. 2d 546, 561 (S.D. Ohio 2008) (citing 4 Restatement 2d, Torts § 766 cmt. h)."Intentional" means that the actor must want to cause a breach of contract, or must know that a breach of contract is substantially certain to result from the interference. *Id.* (citing 4 Restatement 2d, Torts § 766 cmt. j). However, even if the plaintiff can show intentional procurement on the part of the defendant, "[o]nly improper interference with a contract is actionable. . . . [E]ven if an actor's interference with another's contract causes damages to be suffered, that interference does not constitute a tort if the interference is justified." *Fred Siegel Co., L.P.A. v. Arter & Hadden,* 85 Ohio St. 3d 171, 176, 707 N.E.2d 853, 858 (Ohio 1999).

The Ohio Supreme Court has adopted a balancing test to determine, in each case, whether an actor's interference is improper or not under the circumstances:

> Accordingly, in determining whether an actor has acted improperly in intentionally interfering with a contract . . . consideration should be given to the following factors: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness

10

of the actor's conduct to the interference, and (g) the relations between the parties. *Id.* at 860 (citing 4 Restatement 2d, Torts § 767). The nature of the actor's conduct is the chief factor, but the test is a balancing test. 4 Restatement 2d, Torts § 767 cmt. c.

Before even applying the *Fred Siegel* balancing test in this case, Ms. Stewart cannot establish the third element of her tortious interference claim because she has not alleged that RRL or IHT/Firefly breached its contract with her. This is so even though her Complaint contains 310 very detailed paragraphs in 59 pages. While there is a great deal of discussion in the Complaint regarding litigation and infighting between Ms. Stewart and RRL and IHT/Firefly, and while she argues that "Defendants" should have asked "[d]o you have any contract or a business relationship that may be breached or terminated . . . ?" (Compl., ¶ 279), she has <u>not</u> alleged a contractual breach.

Nevertheless, even assuming *arguendo* that the conduct of RRL and/or IHT/Firefly amounts to a breach of contract, Ms. Stewart has failed to allege how the Individual Defendants caused or otherwise induced such breach. Specifically, even if Hartford's denial of her claim or claims was improper, there is no allegation that Hartford's denial of any insurance claims procured any breach. In fact, by the time Ms. Stewart filed her first insurance claim with Hartford—one of the underlying bases for this suit (the IHT Claim) (*Id.* ¶ 276)—Ms. Stewart was already adverse to RRL. That is, Ms. Stewart and RRL were already in litigation in state court. There are no allegations that any of the Individual Defendants took any action that led to additional litigation between Ms. Stewart and RRL or IHT/Firefly.

Finally, Claim 3 must fail for the additional reasons that, even reading the allegations in the light most favorable to Ms. Stewart, she has not alleged that the Individual Defendants' conduct was intended to get RRL or IHT/Firefly to breach any contract with her or that their

11

conduct was not justified. Rather, Ms. Stewart alleges only that the Individual Defendants were acting as agents of Hartford when they processed her claims, or in other words, simply doing their jobs.[3]

The Motion to Dismiss is **GRANTED** as to Claim 3.

### 3. Intentional Infliction of Emotional Distress

Ms. Stewart's next claim, Claim 4, is for intentional infliction of emotional distress ("IIED"). (*Id.* ¶¶ 282–88). The elements for such a claim are:

> "(1) the defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff;
>
> (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community;
>
> (3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and
>
> (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it."

*Talley v. Family Dollar Stores of Ohio, Inc.,* 542 F.3d 1099, 1110 (6th Cir. 2008) (quoting *Ekunsumi v. Cincinnati Restoration, Inc.,* 120 Ohio App. 3d 557, 562, 698 N.E.2d 503, 506 (Ohio 1997)).

Conduct giving rise to an IIED claim must be "so outrageous in character, and so extreme

---

[3] In her Complaint, Ms. Stewart alleges that the "interference period began with the handling of the reported claim on or about April 28, 2015." (Compl., ¶ 276). Contrary to that assertion, in her Memorandum in Opposition, Ms. Stewart also argues that Hartford's interference was its conduct "in securing the commercial appointment for non-party TRG" and meeting with Ms. Stewart to discuss the opportunity that TRG would sell Hartford insurance. (24, ECF No. 5). In fact, Hartford and TRG entered a contractual relationship in 2014 (Compl., ¶ 37)—well before she alleges the interference began. Ms. Stewart cannot use her Memorandum in Opposition to amend her Complaint or signal to the Court her request to do so. *See Louisiana School Employees' Retirement System v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010).

in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Long v. Ford Motor Co.,* 193 Fed. Appx. 497, 503 (6th Cir. 2006) (internal quotations omitted). "[T]o say that Ohio courts narrowly define 'extreme and outrageous' conduct would be something of an understatement." *Baab v. AMR Servs. Corp.,* 811 F. Supp. 1246, 1269 (N.D. Ohio 1993). "Serious emotional distress" must be "severe and debilitating." *Long,* 193 Fed. Appx. at 503 (internal quotations omitted).

The allegations set forth in the Complaint are devoid of facts which might sustain a claim for IIED. Ms. Stewart alleges that Hartford was "involve[d] in the appointment of TRG [and] fail[ed] in responding to the insurance redlining contained in the original claim," that Hartford discredited her, and that Hartford "participat[ed] in knowingly purporting false and disparaging information on [her]." (Compl., ¶¶ 284–86). However, missing from the Complaint is any allegation that the Individual Defendants intended to inflict emotional distress upon Ms. Stewart or knew or should have known that their conduct would result in serious emotional distress to Ms. Stewart, which is the necessary first element of the claim.

Moreover, the Individual Defendants' alleged actions cannot satisfy the second element of the tort. Despite Ms. Stewart's characterization of Hartford's denial of her insurance claims as "discrediting" and "disparaging," the only facts alleged in the Complaint about the Individual Defendants are how they handled her insurance claims. An insurance company's employees' handling of claim processing as alleged in the Complaint cannot be considered beyond the bounds of decency or utterly intolerable in a civilized community. If an insurance claim is improperly denied, the law provides a remedy in the form of a claim for bad faith.

Similarly, Ms. Stewart herself alleges that Hartford had a contractual relationship with TRG that began in 2014. (*Id.* ¶ 37). If it is Hartford's actions in pursuing a contract with TRG

13

that forms the basis for Ms. Stewart's IIED claim, there are no allegations that the Individual Defendants were involved or part of any meetings or contracts with TRG.

Finally, Ms. Stewart does not allege emotional distress that is "serious and of such a nature that no reasonable person could be expected to endure it." *Talley*, 542 F.3d at 1110. Even though the Court accepts as true her allegations that the Defendants' conduct "is an added source of distress" for Ms. Stewart and that she has been subjected to "extreme financial burdens" (Compl., ¶¶ 286–87), these alleged injuries fail to rise to the level of "serious mental anguish." *Jacobs v. Wells Fargo & Co.*, No. 3:10-cv-183, 2011 WL 5120408, at *4 (S.D. Ohio Oct. 27, 2011).

Ms. Stewart's allegations, even if true, cannot support a claim of intentional infliction of emotional distress against the Individual Defendants. The Motion to Dismiss is **GRANTED** as to Claim 4.

### 4. Conversion

In Claim 5, Ms. Stewart alleges that Defendants "exercised control over the property rights of Plaintiff Merrilee Stewart inconsistent with the plaintiff's minority ownership rights." (Compl., ¶ 290).

The elements of a claim for conversion are: "(1) plaintiff's ownership or right to possess the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of [p]laintiff's property; and (3) damages." *Kuvedina, LLC v. Cognizant Tech. Solutions,* 946 F. Supp. 2d 749, 761 (S.D. Ohio 2013).

In support of her claim for conversion, Ms. Stewart has only asserted "labels and conclusions, and a formulaic recitation of the elements of [the] cause of action." *Twombly*, 550 U.S. at 555. There is no factual content to allow the Court to draw a reasonable inference that the

Individual Defendants are liable for conversion. There are no allegations that any of them exercised control over Ms. Stewart's minority ownership rights in RRL or that they were in any way involved in disposition of her ownership.[4]

The Motion to Dismiss is **GRANTED** as to Claim 5.

### 5. Fraud and Misrepresentation

Claim 6 is titled "fraud and misrepresentation." Under the Federal Rules of Civil Procedure, a party "alleging fraud . . . must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). An allegation of fraud "must state the specific circumstances surrounding the alleged fraud with particularity." *Wagner v. Circle W. Mastiffs,* 732 F. Supp. 2d 792, 806 (S.D. Ohio 2010). To meet this requirement, the claim must be

> sufficiently detailed to satisfy the notice requirement . . . [specifying] the parties and the participants to the alleged fraud, the representations made, the nature in which the statements are alleged to be misleading or false, the time, place and content of the misrepresentations, the fraudulent scheme, the fraudulent intent of the defendants, reliance on fraud, and the injury resulting from the fraud.

*Michaels Bldg. Co. v. Ameritrust Co., N.A.,* 848 F.2d 674, 679 (6th Cir. 1988).

Although "Rule 9(b) does not require omniscience[,] . . . the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." *Id.* The plaintiff need not provide facts and evidence of the fraud—only the circumstances with particularity. *Id.* at 680 n.9. But that does not eliminate the requirement that the plaintiff "specifically allege the essential elements of fraud." *United States ex. rel. Bledsoe v.*

---

[4] In her Memorandum in Opposition, Ms. Stewart seeks to supplement her Complaint by also alleging that "Defendants worked in concert of effort to assist IHT/Firefly & RRL counsel in violating obligations owned *sic* to Ms. Stewart as a minority owner" and that "the Hartford and Defendant representatives aided and abetted the criminal activity, including fraud." (27, ECF No. 3). Not only is Ms. Stewart unable to amend her Complaint this way (*see supra* p.12 n.3), these new allegations do not support the elements of a conversion claim.

*Cmty. Health Sys., Inc.,* 501 F.3d 493, 505 (6th Cir. 2007).

There are six elements of a fraud under Ohio law: "a) a representation . . . , b) . . . material to the transaction at hand, c) made falsely, . . . d) with the intent of misleading another into relying upon it, e) justifiable reliance upon the misrepresentation . . . , and f) a resulting injury proximately caused by the reliance. . . ." *Wing v. Anchor Media, Ltd. of Texas,* 59 Ohio St. 3d 108, 111, 570 N.E.2d 1095, 1099 (Ohio 1991) (alterations in original) (internal quotations omitted).

The Complaint is replete with allegations that the Individual Defendants made false, incomplete, and/or misleading statements in their narratives and correspondence regarding Ms. Stewart's claims. In contrast, the Complaint does not contain any allegations regarding the remaining elements of fraud. Namely, there are no allegations that the Individual Defendants had any intent of misleading Ms. Stewart into relying on their allegedly false statements, no allegations that Ms. Stewart did in fact rely on such alleged false statements, and no allegations that injury resulted from such reliance. In fact, the allegations set forth the opposite: Ms. Stewart claims that she recognized the false statements made by the Individual Defendants and she engaged in extensive correspondence with Hartford and the Individual Defendants in an effort to get them to correct their misstatements (and to allow her insurance claims).

The Motion to Dismiss is **GRANTED** as to Claim 6.

### 6. Civil Conspiracy

Claim 7 of the Complaint alleges civil conspiracy. Ohio law defines the elements of civil conspiracy as: "'(1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy.'" *Aetna Cas. and Sur. Co. v. Leahey Constr. Co.,* 219 F.3d 519, 534 (6th Cir. 2000) (quoting

16

*Coach, Inc. v. New York City Transit Auth., Inc.,* 90 Ohio App. 3d 284, 292, 629 N.E.2d 28, 33 (Ohio 1993)). "An underlying unlawful act is required before a civil conspiracy claim can succeed." *Williams v. Aetna Fin. Co.,* 83 Ohio St. 3d 464, 475, 700 N.E.2d 859, 868 (1998). In addition, the malice requirement involves "that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another." *Id.* (internal quotations omitted)."[C]onspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Spadafore v. Gardner,* 330 F.3d 849, 854 (6th Cir. 2003).

Ms. Stewart claims that the acts underlying the conspiracy were to "plan a particular result in the claims which were averse to Plaintiff" and "to withhold claim information or even the fact that a claim existed from the Plaintiff." (Compl., ¶¶ 299–300). These allegations are insufficient as a matter of law. There are no allegations that give rise to any agreement between the Individual Defendants and the alleged "culpable corporate attorneys of RRL/IHT/Firefly to plan a particular result in the claims." (*See id.* ¶ 299). For example, the are no allegations setting forth when any alleged conspiracy was formed and no allegations of malicious intent on the part of the Individual Defendants. The only specifics in the Complaint that even arguably relate to her conspiracy claim are that representatives of RRL or IHT/Firefly are copied on some of the correspondence that some of the Individual Defendants sent to her. (*See, e.g., id.* ¶¶ 69, 70, 72). However, the Individual Defendants' actions of including third parties on correspondence to Ms. Stewart is not sufficient to establish that they "conspired" against her with those third parties.

Nor is there any underlying unlawful act. While Ohio law does allow for fraud to serve as an underlying unlawful act, *Federal Ins. Co. v. Webne,* 513 F. Supp. 2d 921, 927 (N.D. Ohio 2007), as discussed above, Ms. Stewart's allegations do not satisfy a fraud claim or any other

claim of illegal activity.

The Motion to Dismiss is **GRANTED** as to Claim 7.

**7. Misprision**

Ms. Stewart's final claim, Claim 8, is for Misprision of an Anti-Trust Felony. Misprision is a federal crime defined as:

> Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

18 U.S.C. § 4. However, 18 U.S.C. § 4 does not provide a private right of action. *Wolf v. Petrock*, 382 Fed. Appx. 674, 677 (10th Cir. 2010) (holding that criminal statute concerning misprision of felony did not provide for private right of action and was not enforceable through civil action); *see also Am. Postal Workers Union, AFL–CIO v. Indep. Postal Sys. of Am., Inc.*, 481 F.2d 90, 93 (6th Cir. 1973) (noting that "the general rule is that a private right of action is not maintainable under a criminal statute"). Accordingly, this claim fails.

The Motion to Dismiss is **GRANTED** as to Claim 8.

**III.     Leave to Amend the Complaint**

"Under Rule 12(b)(6), a plaintiff with an arguable claim is ordinarily accorded notice of a pending motion to dismiss for failure to state a claim and an opportunity to amend the complaint before the motion is ruled upon." *Neitzke v. Williams,* 490 U.S. 319, 329 (1989). Further, "*pro se* litigants are to be given reasonable opportunity to remedy the defects in their pleadings." *Hall v. Bellmon,* 935 F.2d 1106, 1110 n.3 (10th Cir. 1991) (emphasis added). Therefore, dismissal of a *pro se* plaintiff's complaint for failure to state a claim "is appropriate only where it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [her] an opportunity

to amend [her] complaint would be futile." *Whitney v. New Mexico,* 113 F.3d 1170, 1173 (10th Cir. 1997) (alterations in original) (internal quotations omitted).

Here, for the reasons set forth above, amendment of Ms. Stewart's Complaint would be futile; her Complaint cannot be saved by an amendment.

## IV. Conclusion

For the foregoing reasons, the Motion of Defendants Tyler G. Smith, Anne E. Trevethick, and Julie Dengler to Dismiss the Complaint is **GRANTED**. (ECF No. 2). Ms. Stewart's claims against the Individual Defendants are **DISMISSED WITH PREJUDICE**. The Clerk is **DIRECTED** to **TERMINATE** Defendants Tyler G. Smith, Anne E. Trevethick, and Julie Dengler from this action.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
SARAH D. MORRISON
UNITED STATES DISTRICT JUDGE